# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* C. M. R. KACZKOWSKI, Minor.

FOR PUBLICATION
June 28, 2018
9:00 a.m.

No. 341138
Macomb Circuit Court
Family Division
LC No. 2015-000099-NA

Before: MURPHY, P.J., and JANSEN and RONAYNE KRAUSE, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to minor child pursuant to MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). Respondent's husband and the child's legal father voluntarily released his parental rights. He is not a party to this appeal and he is allegedly not the child's biological father. We affirm.

This case arises in part out of the murder of another child of respondent's. This previous child was murdered by respondent's husband, prior to the birth of the child in this case. Respondent's husband is incarcerated for murdering the previous child. The initial petition recited respondent's prior history with Child Protective Services (CPS), including the death of another child at the hands of respondent's husband, and the fact that respondent had never filed for divorce from her husband despite that he was convicted of murdering respondent's other child. The petition also alleged that respondent was currently in a relationship with JK, alleged to be the instant child's biological father, despite that he was prohibited from having contact with minors due to a prior conviction in Oklahoma for child molestation. The petition also included allegations concerning respondent's poor housing conditions and her mental instability.

Following a hearing, the child was removed from respondent's care and placed in foster care. Respondent was allowed supervised visitation. The treatment plan for respondent had many requirements for her to continue to be a parent to her child, including a parenting program, random drug screens, a complete psychological evaluation and to participate in mental health services. She completed the psychological evaluation, the parenting program, had negative drug screens, began full-time employment and began unsupervised visitations with her child.

Shortly thereafter, a petition to suspend respondent's visitation and to terminate respondent's parental rights was filed by the GAL alleging that respondent was having continued contact with JK and at times this contact occurred when the child present. At the time respondent and JK met and throughout at least the initial period of the instant matter, JK was on

-1-

probation for committing the offense of lewd molestation[1] against a family member in Oklahoma; respondent denied knowing the truth about the specific crime for which JK was on probation but did know that he was on probation.

We are concerned that we cannot find any order in the record explicitly directing respondent to refrain from contact specifically with JK by name, and we are deeply concerned that JK's violation of orders imposed upon him may have been held against respondent. However, the evidence shows that respondent was aware that she was not supposed to have contact with him nor allow him around her child. The relevant factual dispute is whether she actually did. Respondent had sufficient income, suitable housing, a lawful lifestyle, and conducted herself properly with the child. The other concerns were that respondent was lacking in self-control and emotional stability, she had an alleged history of being in the presence of unsafe individuals, and she had not benefitted from counselling despite mostly participating in services offered.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). We review for clear error a trial court's ruling that a statutory ground for termination has been proved by clear and convincing evidence. *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *Id*.

The trial court found that grounds for terminating respondent's parental rights were established under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j), which authorize termination of parental rights under the following circumstances:

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

---

[1] We presume this to be a violation of Okla. Stat. § 21-1123, a felony.

* * *

　　(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

　　(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The trial court cited § 19b(3)(c)(*ii*) as a reason for termination, but neither the trial court nor the parties identify what "other conditions" supported termination. We therefore cannot find a basis for termination on that ground to be established. However, under the circumstances of this case, either the error is harmless or the trial court simply misspoke. *In re Powers Minors*, 244 Mich App 111, 118; 624 NW2d 472 (2000).

Many of the above concerns have been corrected. Respondent's husband is incarcerated and relinquished his rights; we fail to perceive the threat he poses to the child. It appears that respondent's housing is stable even if it is not perfect, her income is sufficient, and her employment has been reasonably steady despite setbacks outside her control. Respondent also completed parenting classes, and she completed two psychological evaluations. There was no dispute that respondent and the child were bonded to each other, and at least for the most part respondent appears to interact appropriately with the child. Furthermore, there was some indication in the record that JK's violation of orders imposed upon him may have been held against respondent, which would be contrary to law.

It is absolutely impermissible for any person to be held responsible for *someone else* violating an order. In other words, a no-contact order issued against JK to have no contact with respondent is an order against JK. It is simply impossible for respondent to violate that order.

Nevertheless, the concern with respondent's ongoing relationship with JK is an entirely appropriate concern. The record is replete with indications that such an order was actually communicated to respondent on many occasions and that she comprehended it. There are numerous references to respondent having been told multiple times by the court, the agency and the GAL that neither she nor her child were to associate with JK to sufficiently establish that such a requirement was in place. While respondent may not be faulted for other individuals' violations of orders against them, her own violations of an order against her is highly significant.

Additionally, there was concern that despite participating in services, respondent did not benefit from those services, or at least did not benefit sufficiently. Her therapist testified that respondent continued to lack insight, and she was unable or unwilling to take responsibility for her actions. The therapist also testified that respondent had shown an increase in her rage and inability to control herself. The therapist expressed concern about respondent's continued contact with JK, and opined that respondent's continued poor decisions in choosing relationships with abusive men was a risk to the child's safety. Respondent's caseworker expressed these

-3-

same concerns, and noted that respondent had obtained a second psychological evaluation, which reported that she was likely to have problems with anger management, impulsiveness, and acting out.

Although the trial court did not specifically make this finding, we agree with the GAL's argument in the trial court that the credibility of the witnesses is critical to the trial court's findings. We are required to defer to any such credibility assessments. MCR 3.902(A); MCR 2.613(C); *McGonegal v McGonegal*, 46 Mich 66, 67; 8 NW 724 (1881). Despite respondent's denials, substantial evidence was presented that respondent had continued to voluntarily associate with JK and allowed the child to be around him. She continued to remain in contact with him, contrary to court orders and despite repeated reminders that neither she nor the child was allowed to have any contact with him. The trial court was entitled to give credence to the testimony of respondent's therapist and case worker. In combination, we cannot find clear error in the trial court's findings that the gravamen of the conditions that led to the adjudication had not been rectified and would not be rectified within a reasonable time. Therefore, the trial court did not clearly err in finding that the evidence supported termination of respondent's parental rights under § 19b(3)(c)(*i*).

The evidence also supports the trial court's reliance on §§ 19b(3)(g) and (j) as additional grounds for termination. "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). "Similarly, a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *Id*. at 711. Respondent's continued voluntary contact with JK, despite being ordered to refrain from doing so and after being made aware of the full extent of his criminal history, supports a finding that she has not benefited from her service plan. Consequently, a finding that respondent was failing to take adequate precautions to keep the child safe from those individuals also supports a finding that there is a reasonable likelihood, based on respondent's conduct or capacity, that the child will be harmed if returned to respondent's home. The testimony that respondent has continued mental health issues, including anger management issues, and that she refuses to consider psychotropic medications as an option for achieving emotional stability, further supports the trial court's findings that grounds for termination were established under §§ 19b(3)(g) and (j).

Respondent also argues that the trial court erred in finding that termination of her parental rights was in the child's best interests. "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). Whether termination of parental rights is in a child's best interests is determined by a preponderance of the evidence. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). Factors to be considered include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*. at 41-42 (citations omitted). A court may also consider whether it is likely "that the child could be returned to her parents' home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012).

Although respondent loves her child, the trial court did not clearly err by finding that termination of respondent's parental rights was in the child's best interests. At the time of the termination hearing, the child had been in foster care for approximately 2-1/2 years. Respondent had made little, if any, progress in addressing the main reasons that the court took jurisdiction over the child. Respondent's therapist opined that it was highly unlikely that respondent would ever be emotionally or psychologically stable enough to provide a safe environment for the child. In contrast, the child was doing well in foster care and her foster parents were willing to adopt her. The caseworker testified that the child was fully adjusted to her foster home and was very bonded with her foster siblings. The caseworker also stated that termination would provide the child with the permanency she needed, especially considering that respondent would not be able to resolve her parental deficiencies within a reasonable period of time. The caseworker had explored alternatives to termination, such as a guardianship, but no one else had come forward and the foster-parents were not interested in that option. The evidence supports the trial court's determination that termination of respondent's parental rights was in the child's best interests.

Affirmed.

/s/ William B. Murphy
/s/ Kathleen Jansen
/s/ Amy Ronayne Krause