*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* L. D. RUSH, Minor.

UNPUBLISHED
June 16, 2022

No. 357745
Wayne Circuit Court
Family Division
LC No. 2012-509287-NA

Before: LETICA, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to the minor child LR under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (parent failed to rectify conditions after being given a reasonable opportunity to do so), (g) (parent failed to provide proper care or custody for child), (j) (reasonable likelihood child will be harmed if returned to parent), and (k)(*i*) (abandonment of a young child).[1] We affirm.

## I. FACTUAL BACKGROUND

Petitioner, the Department of Health and Human Services (DHHS), initiated child protective proceedings against respondent because she had ongoing substance abuse issues that resulted in termination of her parental rights to her two other children and LR testing positive for drugs at birth. The trial court placed LR in the care of respondent's mother, who was also caring for respondent's other two children. The trial court granted respondent supervised visitation, ordered petitioner to refer respondent to parenting classes and individual therapy, ordered respondent to complete substance-abuse counseling and to submit to weekly drug screens, ordered respondent to obtain appropriate housing and provide proof of legal income, and ordered petitioner to provide respondent a parent partner. Respondent failed to comply with her case service plan for nine months due to ongoing health issues, but she consistently visited LR. Petitioner

---

[1] The trial court's written order erroneously excluded the specific statutory ground under subsection (3)(k), but it is apparent that the trial court was referring to subsection (3)(k)(*i*) because that is the statutory ground listed in the permanent custody petition, and the trial court explained in its written order that respondent had effectively abandoned LR.

-1-

investigated alternative services that respondent could complete while handling her health issues, and the trial court provided respondent additional time to complete the services.

Nearly a year after petitioner originally sought jurisdiction over LR, respondent took LR on an unsanctioned, unsupervised visit, during which respondent failed to properly restrain LR in a car that was involved in an accident. Respondent was significantly intoxicated at the time, and she was injured when she was ejected from the car because she was standing through the sunroof. LR was not injured in the accident. The trial court noted that respondent claimed to be too ill to participate in her case service plan but was able to "get drunk and ride around in a [car], standing up with the sunroof open." Petitioner relocated LR to a foster care home because placement with respondent's mother was no longer suitable for LR, and the trial court continued to grant respondent additional time to complete her services. Petitioner subsequently filed a supplemental permanent custody petition seeking termination of respondent's parental rights because respondent had failed—for over a year—to submit to a single drug screen. However, petitioner continued to offer respondent services aimed at reunification pending the termination hearing.

Respondent objected to a videoconference termination proceeding at subsequent dispositional review hearings, and the trial court repeatedly adjourned the termination proceeding until it could be held in person. Petitioner indicated that respondent had received a psychological examination, participated in individual therapy, and completed a parenting class, but respondent still had not started substance-abuse screening or therapy. Respondent claimed that she lacked the necessary pin number to complete the drug screens, but petitioner provided respondent with pin numbers to complete drug screens multiple times. Respondent also claimed that she was homeless and unemployed due to her health issues, but petitioner assisted respondent in searching for appropriate income-based housing. Respondent had participated in almost every offered parenting visit, and the trial court noted that respondent was lucky to have had additional time to "get her stuff together" due to COVID-19-related delays.

Over two years after petitioner filed the original petition, the trial court held the termination hearing via videoconference technology, and respondent failed to attend.[2] Petitioner indicated that respondent had completed her court-ordered parenting classes, received a psychological examination, and participated in individual therapy with a substance-abuse component. Petitioner had to refer respondent to the services multiple times, however, and respondent did not completely benefit from the services. Respondent failed to participate in any of her required drug screens despite petitioner providing respondent the requisite information and pin numbers to do so on five occasions, as well as providing respondent bus tickets to attend the screens. Respondent also failed to secure appropriate housing for herself and LR, failed to provide any proof of her income, and moved to Arizona two months before the hearing without any stated intention of returning.

Respondent consistently attended her in-person visits before her move to Arizona, but she inconsistently attended her virtual visits after the move. LR appeared to have a good bond with

---

[2] It is unclear why the trial court conducted the hearing virtually given respondent's earlier objections, but respondent's counsel expressly waived any objection to this virtual hearing. Moreover, respondent did not raise any issue on appeal with the virtual hearing.

respondent, but he may have only recognized respondent as "just another friendly face in the room," not necessarily as his mother. Respondent completed none of her ongoing services in Arizona, including her required drug screens. Although originally ordered to do so, petitioner never referred respondent to a parent partner because none were available due to a lack of funding. According to LR's foster care worker, respondent indicated that she would like to terminate her parental rights if LR could be placed with a relative, but respondent never provided petitioner with an appropriate relative to care for LR.

The trial court found statutory grounds for termination under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), (j), and (k)(*i*) because respondent failed to complete and benefit from her service plan— despite petitioner's reasonable efforts at reunification—and because respondent effectively abandoned LR by moving to Arizona. The trial court found concerning respondent's failure to address her substance abuse in any way, the car accident to which respondent exposed LR when LR was not even supposed to be in her care, respondent's move to Arizona, and respondent's failure to attend the termination hearing. The trial court explained that "[i]t's almost like [respondent] just abandoned [LR]," and "[i]t would have been different if [respondent] had . . . completed services, made sure that she had gotten [LR] back and then moved to Arizona but she didn't even do that." For those same reasons, the trial court concluded that termination of respondent's parental rights was in LR's best interests because it did not seem respondent would be in a position to care for LR within the near future. Consequently, the trial court terminated respondent's parental rights to LR. Respondent now appeals.

## II. REASONABLE EFFORTS AT REUNIFICATION

Respondent argues that petitioner failed to provide her appropriate and specialized services aimed at reunification, as well as the necessary assistance and resources to succeed in completing those services. Respondent accordingly argues that the trial court prematurely terminated her parental rights because she was denied sufficient time to become a better parent. We disagree.

To preserve the issue of whether DHHS made reasonable efforts at reunification, a respondent must raise the issue at some point between the adoption of the case service plan and the ultimate disposition of the case. *In re Atchley*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 358502 and 358503); slip op at 2. Because respondent did not " 'object or indicate that the services provided to [her] were somehow inadequate' " until she filed this appeal, this issue is unpreserved for appellate review. *Id.*, quoting *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). This Court reviews for clear error preserved issues regarding a trial court's reasonable-efforts findings, but it reviews for plain error affecting substantial rights unpreserved issues regarding a trial court's reasonable-efforts findings. *In re Sanborn*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket Nos. 354915 and 354916); slip op at 1. "To avoid forfeiture under the plain[-]error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.* (quotation marks and citation omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id.* (quotation marks and citation omitted).

The trial court did not err by finding that petitioner made reasonable efforts at reunification before terminating respondent's parental rights. DHHS must generally make reasonable efforts to

reunify families before seeking termination of parental rights.[3] MCL 712A.18f(3)(b) and (c); MCL 712A.19a(2); *Sanborn*, ___ Mich App at ___; slip op at 2. As part of its reasonable efforts, DHHS "must create a service plan outlining the steps both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Sanborn*, ___ Mich App at ___; slip op at 2 (quotation marks and citation omitted). The service plan must include, among other things, "a schedule of services to be provided to the parent . . . to facilitate the child's return to his or her home." *In re Hicks/Brown*, 500 Mich 79, 85-86; 893 NW2d 637 (2017), citing MCL 712A.18f(3)(d) (quotation marks and alteration omitted). DHHS fails to make reasonable efforts at reunification if it does not make "reasonable modifications to the services or programs offered to a disabled parent" pursuant to the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq*. *Hicks/Brown*, 500 Mich at 86.

Because "there exists a commensurate responsibility on the part of respondents to participate in the services [DHHS] offered," *Frey*, 297 Mich App at 248, the respondent should be given a reasonable time to make changes and benefit from services before the trial court terminates his or her parental rights, *In re Mason*, 486 Mich 142, 159; 782 NW2d 747 (2010). Accordingly, the trial court must consider the respondent's compliance with the service plan at any subsequent dispositional review hearings, *id*. at 156, and the trial court may properly terminate the respondent's parental rights where he or she "failed to either participate or demonstrate that they sufficiently benefited from the services . . . specifically targeted to address the primary basis for the adjudication," *Frey*, 297 Mich App at 248. See also *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005) (holding that the trial court did not err by finding that the petitioner made reasonable efforts to preserve a family when it provided supervised visitation with the children, as well as referrals for psychological evaluations and substance-abuse treatment that the respondent did not complete).

"When challenging the services [DHHS] offered, a respondent must establish that he or she would have fared better if other services had been offered." *Sanborn*, ___ Mich App at ___; slip op at 4. Petitioner repeatedly offered respondent services aimed at rectifying the conditions that led to court involvement to allow for reunification: a psychological examination, individual therapy, substance-abuse counseling, drug screens, supervised visitation, and parenting classes. Providing these services constituted reasonable efforts for reunification, see *Fried*, 266 Mich App at 542-543, and respondent raised no issue with these services in the lower court. Although respondent eventually completed the psychological evaluation, participated in individual therapy, and visited LR frequently, respondent failed to address her substance-abuse issues or complete drug screens, failed to obtain appropriate housing for herself and LR, and failed to provide proof of her income.

Thus, the record belies respondent's claim that petitioner did not make reasonable efforts at reunification. To the contrary, petitioner worked at reunification for over two years despite

---

[3] There are certain enumerated exceptions to this rule involving aggravated circumstances, see MCL 712A.19a(2), none of which apply to this case.

respondent's apparent refusal to address the underlying issues that led to court involvement—respondent's substance abuse and lack of permanent housing.

Respondent claims that she could not complete the drug screens because she did not have the necessary pin numbers to do so and because she had transportation issues. Neither of these are valid excuses for respondent's failure to submit to the drug screens because petitioner provided respondent the requisite pin numbers on at least five occasions, and petitioner provided respondent bus tickets to attend the drug screens. After two years of failing to comply with her service plan—without raising any issues with the plan—respondent moved to Arizona with no stated intention to return. While in Arizona, respondent continued to avoid her required services, all of which petitioner rereferred her to in Arizona; respondent again raised no objection with the services that she failed to utilize. Respondent thus failed in her "commensurate responsibility" to participate in the services petitioner offered for two years. *Frey*, 297 Mich App at 248.

Respondent now asserts on appeal that she should have been provided a parent partner to assist in completing her services, and that petitioner failed to reasonably accommodate her disability. Although the trial court originally ordered a parent partner, petitioner could not provide one due to a lack of funding for that program. In light of the numerous other services offered to respondent, the lack of a parent partner cannot be deemed substantial. Moreover, while respondent implies that she had some type of intellectual disability, her argument in this regard is undeveloped and nothing in the record shows a violation of the ADA. Respondent does "not provide any substantive argument on how those services were deficient or how they were not reasonable or appropriate in light of her intellectual disability," nor does she identify how she would have fared any better with a parent partner or any other alternative service. *Sanborn*, ___ Mich App at ___; slip op at 4.

Rather than being *unable* to complete the drug screens and substance-abuse counseling due to a disability, it appears respondent simply refused to do so, even with additional assistance from DHHS caseworkers. Respondent's failure to complete numerous critical services, coupled with her failure to identify any alternative services under which she would have been more successful, renders meritless her claim that she was denied the opportunity to become a better parent to LR. See *id*. (requiring a respondent to establish that she would have fared better with alternative services).

Petitioner made reasonable efforts at reunification by developing and implementing a case service plan that outlined the steps respondent should take to rectify the issues that led to court involvement, but respondent failed to make necessary adjustments in her life to sufficiently participate in or benefit from the targeted services. Consequently, the trial court did not err by finding that petitioner made reasonable efforts at reunification before terminating respondent's parental rights.

### III. STATUTORY GROUNDS FOR TERMINATION

Respondent argues that there is insufficient evidence to support any statutory ground to terminate her parental rights because she was working toward compliance with her treatment plan and was motivated to parent LR. We disagree.

The trial court did not clearly err by finding at least one statutory ground to terminate respondent's parental rights by clear and convincing evidence. "This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests." *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020) (quotation marks and citation omitted). A finding of fact is clearly erroneous if the reviewing court has "a definite and firm conviction that a mistake has been committed," giving due regard to the trial court's "special opportunity . . . to judge the credibility of the witnesses." *Id.* (quotation marks and citations omitted).

If DHHS files a termination petition, the trial court must hold a termination hearing to determine whether clear and convincing evidence establishes that "one or more statutory grounds for termination exist." *In re Ferranti*, 504 Mich 1, 16; 934 NW2d 610 (2019). See also *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011) ("Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds.").

MCL 712A.19b(3)(c)(*i*) allows a trial court to terminate parental rights if it finds that the following is proven by clear and convincing evidence:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

The trial court did not clearly err by finding that MCL 712A.19b(3)(c)(*i*) was proved by clear and convincing evidence because respondent's substance abuse—the condition that led to adjudication—continued to exist throughout the pendency of this case.[4] As explained earlier, respondent refused to address her substance-abuse issues; she failed to participate in substance-abuse counseling and failed to submit to drug screens, despite having over two years to do so. Petitioner not only provided respondent the necessary pin numbers to complete the drug screens, but also provided respondent bus tickets to attend the screens. Respondent, therefore, had no excuse for her failure to work towards resolving her substance-abuse issues. See *Sanborn*, ___ Mich App at ___; slip op at 9 (explaining that even "mere participation" in offered services—let alone no participation—may be insufficient to prevent termination under MCL 712A.19b(3)(c)(*i*) because "participation is not the same as overcoming the barriers in place").

It also was not reasonably likely that respondent would rectify this primary area of concern within a reasonable time because respondent had failed to address her substance abuse for years before this case even began. Respondent's substance abuse previously resulted in termination of her parental rights to her other two children, and respondent had made no progress toward rehabilitation even when faced with termination of her parental rights to LR, demonstrating a clear

---

[4] It is undisputed that the 182-day period was satisfied.

-6-

unwillingness to change. That respondent moved to Arizona and continued to defy the court-ordered drug screens also demonstrates there existed little likelihood she would rectify the condition within a reasonable time. The trial court thus properly found that respondent's failure to participate in, or benefit from, the offered services proved MCL 712A.19b(3)(c)(*i*) by clear and convincing evidence. See *In re Kaczkowski*, 325 Mich App 69, 76-77; 924 NW2d 1 (2018) (reasoning that the respondent's failure to benefit from services supports termination under MCL 712A.19b(3)(c)(*i*)); *Frey*, 297 Mich App at 248 (holding that the trial court properly found "insufficient compliance with and benefit from" the services "specifically targeted to address the primary basis for the adjudication," namely historical problems with substance abuse, necessitated termination of the respondent's parental rights).

We also note that in addition to her substance abuse—which was the primary condition that led to the adjudication—petitioner also provided respondent resources and assistance to ensure respondent acquired permanent housing. Despite this assistance, and despite being required by respondent's case service plan, respondent continued to lack appropriate housing for herself and LR, and respondent continuously failed to verify any legal income. Additionally, despite multiple attempts, respondent was unable to provide petitioner the names of any relatives who could appropriately care for LR. Finally, respondent, while significantly intoxicated, placed LR at risk of serious injury by subjecting him to a dangerous car accident that injured respondent—who was not even supposed to have LR in her care at the time.

Ultimately, the trial court properly found that termination of respondent's parental rights was warranted because there existed at least one statutory ground for termination, MCL 712A.19b(3)(c)(*i*). Having concluded that the trial court did not clearly err in this regard, we need not address the remaining grounds for termination identified by that court. See *Ellis*, 294 Mich App at 32.

## IV. BEST INTERESTS

Respondent argues that there is insufficient evidence to support the trial court's finding that termination of her parental rights was in LR's best interests. Respondent also argues that she should have been afforded additional time to plan for reunification, and petitioner should have worked harder to place LR with a relative—which may have negated the need to terminate her parental rights. We disagree.

The trial court did not clearly err by finding that termination of respondent's parental rights was in LR's best interests. After the trial court exercises jurisdiction over a minor child and finds at least one statutory ground for termination, the trial court must terminate the respondent's parental rights if a preponderance of the evidence demonstrates termination is in the child's best interests. MCL 712A.19b(5); *Mota*, 334 Mich App at 320. In making its best-interests determination, the trial court must "focus on the child rather than the parent." *Mota*, 334 Mich App at 321.

> In assessing a child's best interests, a trial court may consider such factors as a child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic

violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. The trial court may also consider how long the child was in foster care or placed with relatives, along with the likelihood that the child could be returned to [the] parents' home within the foreseeable future, if at all. [*Id.* (quotation marks and citations omitted; alteration in original).]

A trial court generally must also consider a child's placement with relatives, which weighs against termination. *Id.*

It is a parent's responsibility to "demonstrate that she can meet [her children's] basic needs before they will be returned to her care." *In re Terry*, 240 Mich App 14, 28; 610 NW2d 563 (2000). In this case, many of the same reasons supporting the statutory ground for termination also demonstrated that termination of respondent's parental rights was in LR's best interests. Petitioner made numerous attempts for over two years to assist respondent with her substance-abuse issues, but petitioner cannot force a parent to prioritize a child over himself or herself. Respondent actively refused to address her substance-abuse issues, despite those issues serving as the basis for adjudication of LR and previously serving as the basis for termination of her parental rights to her other two children. "If a parent cannot or will not meet her irreducible minimum parental responsibilities, the needs of the child must prevail over the needs of the parent." *Id.* (quotation marks and citation omitted). Respondent's failure to "address[] the main reasons the court took jurisdiction over the child" may serve as evidence that termination is in the child's best interests, *Kaczkowski*, 325 Mich App at 78-79, and the trial court here properly found that respondent's continuous refusal to address her substance abuse demonstrated that termination of her parental rights was in LR's best interests. See also *Sanborn*, ___ Mich App at ___; slip op at 11-12 (explaining that the respondent's failure to benefit from the case service plan supports termination of the respondent's parental rights, especially where concerns carried over from previous cases regarding the respondent's other children).

Respondent now argues on appeal that petitioner denied her appropriate time to plan for reunification, but this argument is meritless. Respondent was provided an additional nine months to comply with her treatment plan than she otherwise would have had because she consistently requested an in-person termination hearing. Respondent still failed to comply with the plan during this additional time, and she then failed to participate in the termination hearing at all, demonstrating an indifference to the outcome of the case and belying her claim that she was denied the opportunity to become a better mother to LR. Moreover, respondent's parenting ability was just one factor that the trial court could consider in assessing LR's best interests, and it was not clearly erroneous for the trial court to conclude other relevant factors, such as LR's need for stability and safety, outweighed this factor to the extent that it may be deemed favorable to respondent.

Simply put, the trial court did not clearly err by finding that the lack of evidence regarding respondent's bond with LR, the ongoing concerns posed by respondent's substance abuse, and the immense risk of harm to which respondent subjected LR outweighed respondent's alleged desire to continue caring for LR.

Finally, respondent's contention that petitioner should have tried harder to place LR with a relative misconstrues the record. Petitioner investigated each relative respondent recommended for LR's placement, but petitioner concluded none of them were a suitable placement for LR. It is hard to imagine how much more petitioner could have done in this regard when respondent could not even identify an appropriate relative with whom LR could stay.

## V. CONCLUSION

For the reasons explained herein, the trial court did not err by finding that petitioner made reasonable efforts at reunification, and did not clearly err by finding that there existed at least one appropriate statutory ground for termination and that termination of respondent's parental rights was in LR's best interests.

Affirmed.

/s/ Anica Letica
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan