*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* C.W. EVERETT, Minor.

UNPUBLISHED
October 13, 2025
11:19 AM

No. 375506
Berrien Circuit Court
Family Division
LC No. 2024-000006-NA

Before: GADOLA, C.J., and MURRAY and YATES, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights to his minor child, CW, under MCL 712A.19b(3)(c)(*i*) and (j). We affirm.

## I. FACTS

Respondent is the father of CW. In January 2024, CW was removed from the care of respondent and the child's mother.[1] At that time, the couple was homeless and had a history of methamphetamine use. The couple had left CW in the care of the child's maternal grandmother who also had a history of substance abuse, a drug conviction from 2020, and untreated mental illness, and allowed others to use illegal substances in her home. When Child Protective Services (CPS) investigated, the CPS worker learned that the grandmother's domestic partner lived in the home after recently having been paroled; earlier that day, he and the grandmother had been involved in domestic violence witnessed by CW.

While at the grandmother's home, the CPS worker saw several people come and go from the house. Upon further investigation, the CPS worker learned that also living in the grandmother's house were her domestic partner's sister, the sister's husband, their two children, and the grandmother's nephew and his wife, who reportedly used methamphetamine in the house.

---

[1] The parental rights of the child's mother also were terminated; she is not a party to this appeal.

An older couple also was living in the house; the grandmother reported that the older couple had just moved in and she did not know their names.

The grandmother told the CPS worker that respondent and the child's mother were homeless and were addicted to methamphetamine. The grandmother informed the CPS worker that CW's parents were not involved in the child's life and that she did not know their whereabouts; she had picked up the child from respondent two days earlier at a church. The grandmother further told CPS that respondent and the child's mother did not have a phone and were not responding to her attempts to reach them through Facebook. CPS learned that CW, age six at that time, was not attending school and had not been toilet trained.

CPS removed the child from the grandmother's home, and the Department of Health and Human Services filed a petition with the trial court alleging the circumstances of the removal. The child thereafter was placed in foster care. After respondent established paternity of CW, the trial court held a preliminary examination at which the trial court authorized the filing of the petition. The trial court set the matter for an adjudication trial on the basis of the allegations of the petition, including allegations that respondent had tested positive for methamphetamine in January, February, and March 2024, one week before the preliminary examination. Thereafter, respondent continued to test positive for methamphetamine. The trial court cautioned respondent that he had to demonstrate that he was no longer using substances before the child could be returned to his care.

At the adjudication hearing, respondent pleaded no contest to the allegations of the amended petition including the allegation that he tested positive for methamphetamine and amphetamine five times between January 31, 2024 and March 5, 2024. The trial court assumed jurisdiction of CW under MCL 712A.2(b)(1) and (2), finding that respondent had failed to provide the care necessary for the child's health and that it was unsafe for the child to remain in the home. The trial court adopted the case service plan, which identified the barriers to respondent reunifying with CW as respondent's substance abuse, lack of emotional stability, lack of parenting skills, and lack of employment. The trial court ordered respondent to comply with the case service plan, which included respondent successfully participating in substance abuse treatment, counseling, parenting classes, parenting time, and respondent gaining employment and maintaining a home suitable for a child.

At the review hearing in May 2024, the trial court found that respondent had made some progress. The foster care case worker testified that respondent reported being an Uber driver, but had not provided verification, had obtained a home that was essentially suitable, was attending parenting time with the child and appeared to be bonding well with the child, and was planning to attend a substance detox program.

At a review hearing held August 14, 2024, however, the trial court observed that respondent had repeatedly tested positive for methamphetamine and left inpatient substance abuse treatment after six days without completing the program. The foster care case worker reported that respondent continued to have adequate housing and was attending parenting time and bonding well with the child.

At the conclusion of the permanency planning hearing on November 13, 2024, the trial court changed the goal from reunification to termination of parental rights. The foster care case worker testified that after nine months of services being offered, respondent had not successfully participated in substance abuse treatment, and his drug screens were positive for methamphetamine. Although respondent had been attending parenting time and there was a bond between respondent and CW, respondent otherwise had failed to comply with the case service plan. Respondent had moved to different housing and the foster care case worker had not had an opportunity to inspect it. Respondent did not have employment and had not participated in parenting classes. The foster care case worker recommended that a termination petition be filed. The trial court found that aside from attending parenting time with the child, respondent had not participated in the case service plan and particularly had not addressed his substance use. The trial court ordered the agency to initiate termination of respondent's parental rights.

The agency petitioned the trial court to terminate respondent's parental rights to CW. During the termination hearing, the foster care case worker testified that the barriers for respondent regaining custody of CW primarily were his ongoing substance abuse, but also lack of employment, emotional stability, and parenting skills. The foster care case worker testified that respondent's most recent drug screen one month earlier was positive for methamphetamine. Regarding employment, during the year after CW was removed from his care, respondent reported that he was an Uber driver, a cable lineman, and that he recorded and produced music for local artists from his home studio. He never provided proof of employment, however. During that time, his car reportedly was destroyed and he moved into an apartment, suggesting that he was not driving passengers or recording music in his home studio.

Respondent testified that he uses amphetamines and tested positive for substances throughout the year that CW was in foster care. He testified that he left substance abuse inpatient treatment after five days, and did not participate in the offered outpatient substance abuse treatment, but attends NA twice each week. He acknowledged that he did not participate in the offered parenting classes. Respondent testified that he recently had moved to an apartment and was about to start employment with a tree service as a tree climber. He testified that he loves CW, visited him regularly during the year, and has a strong bond with him.

At the conclusion of the termination hearing, the trial court found that clear and convincing evidence demonstrated that termination of respondent's parental rights was warranted under MCL 712A.19b(3)(c)(*i*) and (j). The trial court found that respondent had not complied with the case service plan and therefore had derived no benefit from the offered services, and that the conditions that led to adjudication had not been rectified. The trial court also found that there likely would be harm to CW if he were returned to respondent's care. The trial court also found that it was in the child's best interests to terminate respondent's parental rights. The trial court therefore terminated respondent's parental rights to the child. Respondent now appeals.

## II. DISCUSSION

Respondent contends that the trial court erred by determining that termination was in CW's best interests because it did not consider factors relevant to the child's best interests. We disagree.

Once the trial court finds that a statutory basis for terminating a parent's rights has been established, the trial court must terminate the parent's rights if a preponderance of the evidence demonstrates that termination is in the child's best interests. MCL 712A.19b(5); *In re Lombard*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367714); slip op at 5. We review for clear error the trial court's decision regarding a child's best interests. *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021). In doing so, we focus on the child, not the parent. *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022).

When determining the best interests of a child in a termination proceeding, the trial court is required to weigh the available evidence and consider a wide variety of factors, including the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, the advantages of the foster home over the parent's home, the length of time the child has been in care, the likelihood that the child could be returned to the parent's home in the foreseeable future, and the parent's compliance with the case service plan. See *In re Sanborn*, 337 Mich App at 276-277.

A parent's failure to participate in a case service plan and benefit from that plan is evidence that the parent is not able to provide proper care and custody for the child and that the child will be harmed if returned to the parent's home. *In re Kaczkowski*, 325 Mich App 69, 77; 924 NW2d 1 (2018). In this case, the trial court considered respondent's failure to comply with the case service plan, and particularly respondent's failure to address his substance abuse. Respondent briefly participated in inpatient substance abuse treatment, but left the program without completing it. Thereafter, he failed to participate in outpatient substance abuse treatment; although he reported that he attended NA weekly, he continued to test positive for methamphetamine. Respondent attended parenting time and appeared to have a bond with CW, but failed to participate in parenting education. He reported having housing, but apparently moved three times during the year the child was in care. He reported having employment, but failed to provide proof of employment or other source of income; at the time of the termination hearing, he was anticipating starting a job but did not have proof of that employment. The trial court considered that during the approximately 14 months that the child was in foster care, he had received needed medical and dental care, had started school and, through the help of the foster parents, was catching up on the delay in education. He was gaining confidence by playing sports and being part of a stable family. The trial court considered the child's need for stability and permanency, which the foster home provided, the child's bond with the foster parents, and the foster parents' willingness to adopt CW. The trial court did not fail to consider the relevant factors regarding CW's best interests, and did not clearly err by concluding that termination of respondent's parental rights was in the best interests of the child.

Affirmed.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Christopher P. Yates