*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* M. S. STALLWORTH, Minor.

UNPUBLISHED
December 22, 2025
9:34 AM

No. 374874
Wayne Circuit Court
Juvenile Division
LC No. 2021-001353-NA

Before: GADOLA, C.J., and CAMERON and RICK, JJ.

PER CURIAM.

Respondent-father appeals as of right the order terminating his parental rights to the minor child, MSS, under MCL 712A.19b(3)(a)(*ii*) (desertion of child for 91 or more days); MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist); MCL 712A.19b(3)(c)(*ii*) (failure to rectify other conditions that caused jurisdiction); and MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent). We affirm.

## I. FACTUAL BACKGROUND

This case involves the termination of father's parental rights to MSS.[1] In its petition filed in January 2022, petitioner, the Department of Health and Human Services (DHHS), alleged that father "provided periodic financial . . . support" for MSS but had not visited her face-to-face since 2019. At the preliminary hearing, Tonya Thomas, who filed the petition, stated father had "sporadic contact[]" over FaceTime with MSS. Father lived with his aunt and, according to Thomas, he had "some difficulties with understanding" English. After father waived a probable cause determination, the trial court authorized the amended petition and determined reasonable efforts to reunify the family were required. After a pretrial hearing, the trial court also assumed jurisdiction over MSS and ordered DHHS to prepare a treatment plan. The trial court adopted a

---

[1] MSS's biological mother's rights were also terminated in the proceedings below, but she does not participate in this appeal.

case service plan, which required father to participate in supervised visits and a psychological evaluation, maintain suitable housing, and maintain a steady source of income.

In June 2022, Michelle Weatherspoon, MSS's foster care worker, indicated father attended 18 of 20 visits with MSS. Father was "terminated" from his therapy and parenting classes. He told Weatherspoon he did not want to participate and he did not "believe that he need[ed] the services . . . ." The trial court ordered DHHS to again refer father for services. Before the next hearing in September 2022, father moved to Milwaukee, Wisconsin, because he did not have "appropriate housing" in Michigan. He had two Zoom visits with MSS in the three weeks before the hearing. The trial court said that father was not making progress toward alleviating the conditions that brought MSS into DHHS's care. Father started therapy and weekly parenting classes before the next hearing in December 2022. He had one face-to-face visit with MSS between the hearings, as well as weekly video visits.

Father moved back to Michigan in February 2023. At a dispositional review hearing in July 2023, Samantha Burks, who was then MSS's caseworker, stated she was unable to contact father, after calling his last two phone numbers. The trial court found that reasonable efforts were made toward reunification, but that father had failed to benefit from those efforts. The court ordered DHHS to file a termination petition. Burks was finally able to contact father before a review hearing in January 2024. Father was then living in Benton Harbor, Michigan.

DHHS filed a supplemental petition to terminate father's parental rights to MSS on April 23, 2024. DHHS alleged that father did not complete parenting classes, individual therapy, or a psychological evaluation. Father also missed most of his scheduled visits (68 of 96), and allegedly abandoned MSS by failing to visit or support her.

An adjudication was held in November 2024. At the hearing, Burks stated that father had not engaged in any court-ordered services for almost a year and a half, despite having been referred a second time for specialized parenting classes, therapy, and a psychological evaluation. In Burks's view, father was not "any closer . . . to rectifying the issues that brought [MSS] into care[.]" He could come into compliance "if he ha[d] a support system[,]" but could not meet MSS's needs on his own.

Regarding father's contact with MSS, he called her foster parent about once a month during 2022. Father had some phone calls with MSS in December 2023 and sent money for birthday and Christmas gifts. In Burks's view, father did not "support" MSS, because he only sent money "every so often." Burks alleged she could not consistently contact father to schedule parenting time visits, since "his phone number constantly changed . . . ." His only visit with MSS in 2024 was on her birthday. Father failed to attend another visit in October 2024. When Burks first contacted father in April 2024, she "recognize[d] that he might be cognitively delayed or impaired[.]" According to Burks, DHHS did "[n]othing" to "accommodate" father. Father stated he had not been diagnosed as "mentally impaired . . . ."

Father said he moved to Benton Harbor in 2022 after his aunt died. He did not visit MSS regularly before that because of his aunt's health issues. According to father, his aunt's death also prevented him from starting his parenting classes for three years. As to the October 2024 visit that he failed to attend, father stated he was confused about where he and MSS were supposed to meet.

Finally, father planned to move to Highland Park, Michigan to stay with a family friend. There was no room for MSS at his friend's house, but father was working on finding appropriate housing with his cousin. Regarding income, father stated that he was on disability and received income from his deceased father's Social Security benefits. When asked to clarify whether those were survivor's benefits, father stated that he did not know, but confirmed that the Social Security checks were issued in his name, not his father's name. The trial court stated "there was . . . virtually no compliance at all[]" from father for 2 ½ years while MSS was in foster care. Father also did not support MSS or show an ability to parent her. The trial court thus found statutory grounds existed to support termination of father's parental rights.

The best-interests hearing took place in January 2025. Burks testified that father had visited MSS once since the adjudication. Father scheduled a couple visits in December 2024, but "didn't follow through with them . . . ." Father completed his parenting classes and psychological evaluation. He failed to obtain housing with enough room for MSS. In Burks's view, termination of father's parental rights would provide MSS with permanency and stability, as her foster placement was willing to adopt her. Father said he moved to the Detroit area in December 2024, then moved back to Benton Harbor to live with his cousin. Father canceled a scheduled December visit because of family issues. Father stated he wanted to care for MSS and could do so with his cousin's support.

The trial court found that father failed to participate in court-ordered services, failed to find suitable housing, and failed to visit with MSS. With MSS having been in foster care for three years, father could not fulfill MSS's need for permanency and stability. The trial court terminated father's parental rights to MSS, finding termination was in her best interests. This appeal followed.

## II. ANALYSIS

### A. REASONABLE ACCOMMODATIONS

Father argues that the trial court erroneously terminated his parental rights because DHHS did not provide reasonable accommodations for alleged cognitive disability in the case service plan. We disagree.

This Court reviews for clear error the trial court's determination that statutory grounds exist to terminate a respondent's parental rights. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010) (citations omitted). "A finding is clearly erroneous [if] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted; alteration in original).

DHHS must prepare a case service plan including "a [s]chedule of services to be provided to the parent[] [and] child . . . to facilitate the child's return to his or home . . . ." *Id*. (quotation marks omitted; first alteration in original), citing MCL 712A.18f(3)(d). However, "there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Atchley*, 341 Mich App 332 339; 990 NW2d 685 (2022) (quotation marks and citation omitted). A respondent must also "demonstrate that they sufficiently benefited from the services provided." *Id*. (quotation marks and citation omitted). If a respondent is disabled, DHHS

must accommodate that disability through "reasonable modifications to the services or programs offered . . . ." *In re Hicks/Brown*, 500 Mich 79, 86; 893 NW2d 637 (2017).

The trial court's service plan directed father to complete a psychological evaluation, maintain contact with caseworkers, and regularly visit MSS. Case workers repeatedly suspected that father had a cognitive disability, although father never fully specified the nature of that disability. Indeed, father stated he was not diagnosed with a mental impairment and did not take "mental health medication." Father's counsel likewise claimed there were no allegations to justify ordering a psychological evaluation. The trial court also stated it would appoint a guardian ad litem for father at his counsel's request, but there is no evidence a guardian was ever appointed. MSS was in DHHS's care for over three years, yet father did not complete a psychological evaluation before the adjudication. According to Burks, he continually changed his phone number, preventing her from contacting him to schedule visits. Father also did not attend multiple scheduled visits while he lived in Michigan in 2024.

Regarding therapy and parenting classes, father was terminated from those services in June 2022 because he did not want to participate. DHHS referred father for specialized parenting classes to accommodate his suspected disability. Father did not attend all of those classes and did not complete the classes before the adjudication. A respondent's failure to comply with their service plan "is evidence that the child will be harmed if returned to the parent's home[,]" under MCL 712A.19b(3)(j). *In re Kaczkowski*, 325 Mich App 69, 77; 924 NW2d 1 (2018) (quotation marks and citation omitted). Further, a respondent must identify what services would have accommodated their disability, and establish they "would have fared better if other services had been offered." *In re Sanborn*, 337 Mich App 252, 266; 976 NW2d 44 (2021) (citation omitted). Father does not identify what specialized services would have accommodated his alleged disability, nor how he would have benefited from them. The record shows father did not complete or benefit from the services petitioner offered, even the services intended to discern and accommodate his suspected but unconfirmed mental disability. The trial court did not err by finding that DHHS made reasonable efforts toward reunification. Father is not entitled to relief on this basis.

## B. BEST INTERESTS

Father also asserts that termination of his parental rights was not in MSS's best interests. We disagree.

This Court reviews a trial court's best-interests determination for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Miller*, 347 Mich App 420, 425; 15 NW3d 287 (2023) (citation omitted).

In addition to finding statutory grounds for termination, a trial court must find "termination of parental rights is in the child's best interests" before ordering termination. MCL 712A.19b(5). A trial court's best-interests determination must be supported by a preponderance of the evidence, and a trial court can consider "the whole record . . . ." *Sanborn*, 337 Mich App at 276 (quotation marks and citations omitted). "[T]he child's bond to the parent, the parent's parenting ability, the

child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home, are all factors for the court to consider when deciding whether termination is in the best interests of the child." *Id.* at 276-277 (quotation marks and citation omitted). Visitation history and the parent's compliance with service plans are also permissible best-interest factors. *Id.* at 277 (citations omitted).

The preponderance of the evidence demonstrated that termination was in MSS's best interests. Father's argument to the contrary parallels his argument regarding reasonable accommodations. He asserts the trial court could not properly consider MSS's best interests because DHHS did not make reasonable efforts to accommodate him. This argument lacks merit because, as discussed above, father did not complete the reunification services petitioner offered. In addition to not completing specialized parenting classes and a psychological evaluation, father canceled multiple visits with MSS. He acknowledged his home in Benton Harbor did not have room for MSS, failing to obtain suitable housing as the service plan required.

Father also asserts that the trial court should have allowed him more time to comply with the service plan. The trial court rejected this argument, stressing that MSS was in foster care for over three years, during which father only had sporadic contact with her. In its view, there was no evidence that father could rectify the conditions that led to adjudication within a reasonable time. The trial court did not err by relying on MSS's need for permanency and stability. A child's need for permanency, "considering how long the child was in foster care and how long the child might have to wait for [a father] to rectify the conditions that still existed, [is] a heavy factor in favor of termination." *Sanborn*, 337 Mich App at 278. Moreover, in making a best-interest determination, the focus is on the child, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). Given that MSS was in foster care for more than three years and father never managed to adhere to his case service plan during that time, allowing father additional time to comply before terminating his parental rights was simply unwarranted. The relevant factors supported the trial court's best-interest determination and its termination of father's parental rights.

Affirmed.

/s/ Michael F. Gadola
/s/ Thomas C. Cameron
/s/ Michelle M. Rick

-5-