*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. A. UREEL, Minor.

UNPUBLISHED
December 21, 2023

No. 366249
St. Clair Circuit Court
Family Division
LC No. 21-000178-NA

Before: JANSEN, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

Respondent appeals as of right the May 3, 2023 order of the St. Clair Circuit Court terminating his parental rights to his minor child, JAU, under MCL 712A.19b(3)(c)(*i*) (the condition that led to adjudication continues to exist), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood the child will be harmed if returned to the parent).[1] We affirm.

## I. FACTS

Petitioner, the Department of Health and Human Services (DHHS), filed a petition for removal of JAU in October 2021. In relevant part, the petition alleged respondent father and JAU's mother (1) engaged in substance abuse, (2) subjected JAU to unstable and unsuitable housing, and (3) had a history with Child Protective Services (CPS) because of their issues with substance abuse, housing instability, and untreated mental health issues. The parents left their home due to having no electricity or running water. The petition further alleged JAU was living with respondent in a house "known for methamphetamine sales… placing him at risk of threatened harm." Petitioner requested the trial court place JAU in the care of DHHS and exercise jurisdiction. After a preliminary hearing, the trial court authorized the petition, and the minor child was placed in the care of his maternal great aunt. Respondent, who was serving a jail sentence at the time of the preliminary hearing, was granted supervised parenting time upon his release.

---

[1] The minor child's mother is not a party in this appeal.

In December 2021, respondent was released from jail. After a March 2022 adjudication trial, the trial court exercised jurisdiction and ordered reasonable efforts toward reunification be made.[2] After the initial dispositional hearing, respondent was ordered to comply with his case service plan, which required him to submit to a psychological and substance abuse assessment and to comply with and benefit from mental health therapy, a life skills course, and parenting classes. Respondent was further ordered to submit to random drug screenings, obtain and maintain suitable housing and a legal source of income, attend supervised parenting time and court hearings, and maintain contact with the caseworkers. Respondent failed to provide proof of legal income and obtain suitable housing. Respondent also refused to submit to drug screenings throughout the proceedings. Respondent completed a psychological evaluation, a substance abuse evaluation, and a parenting class. However, he refused to participate in the recommendations from those services which included substance abuse outpatient counseling and a psychiatric evaluation. Respondent did attempt individual therapy but his attendance was inconsistent. Notably, in October 2022, respondent assaulted a staff member at JAU's school, admitted to driving without a license, and possessed narcotics on school property. In January 2023, a warrant was issued for respondent's arrest. At that time, respondent ceased consistent communication with the caseworker and stopped attending parenting time.

In February 2023, DHHS filed a supplemental petition for termination. After holding a termination hearing, the trial court found grounds for termination were established under MCL 712A.19b(3)(c)(*i*), (g), and (j).[3] The trial court also found termination of respondent's parental rights was in JAU's best interests and reasonable efforts toward reunification were made. Respondent appeals.

## II. STATUTORY GROUNDS

Respondent argues the trial court clearly erred by finding a statutory ground to terminate his parental rights. We disagree.

## A. STANDARD OF REVIEW

"We review for clear error [a] trial court's finding that there are statutory grounds for termination of a respondent's parental rights." *In re Atchley*, 341 Mich App 332, 343; 990 NW2d 685 (2022). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Miller*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 364195); slip op at 2.

## B. ANALYSIS

---

[2] Respondent appealed this decision and this Court affirmed. *In re J A Ureel Minor*, unpublished per curiam opinion of the Court of Appeals, issued October 27, 2022 (Docket No. 360662), p 4.

[3] The trial court found termination was not proper under MCL 712A.19b(3)(c)(*ii*) (other conditions exist that could have caused the minor child to come within the trial court's jurisdiction).

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (citation omitted). The trial court in this case found that grounds for terminating respondent's parental rights were established under MCL 712A.19b(3)(c)(*i*), (g), and (j). We conclude the trial court did not clearly err by finding termination of respondent's parental rights was proper under MCL 712A.19b(3)(j), which authorizes termination when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent."

Respondent lacked suitable, stable housing throughout the proceedings. At the time of termination, respondent was incarcerated and it was unclear when he would be released. Indeed, respondent had pending criminal charges and had not yet been given a trial date. When respondent was not incarcerated, he struggled with obtaining and maintaining legal income. Clearly, homelessness and unsuitable living conditions would have traumatic effects on the minor child, who had spent most of his life in care and desperately required permanency.

Respondent also had issues with substance abuse, mental health, and anger management despite being referred for individual therapy and other services. Respondent failed to comply with his case service plan, was argumentative, and was admittedly defiant. See *In re Kaczkowski*, 325 Mich App 69, 77; 924 NW2d 1 (2018) ("a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home") (quotation marks and citation omitted). The caseworker believed respondent would be unable to safely parent JAU because his substance abuse and mental health issues were not addressed. Importantly, JAU has special needs, which require his participation in services and medication. It is unclear how respondent would provide for JAU's special needs if he were returned to respondent's care. Indeed, during the proceedings, respondent refused to consent to JAU receiving psychotropic medication, was unable or unwilling to get along with others, and assaulted a staff member at JAU's school. JAU's behavioral interventionalist refused to attend meetings with respondent because of his behavior.

Additionally, it is clear that respondent is unable or unwilling to provide a stable environment for JAU. Respondent's behavior at parenting times, which included making improper comments and engaging in prolonged and emotional goodbyes, had a negative effect on JAU and his behavior at school. Respondent's jail stints and inability to attend parenting times also negatively impacted JAU. Respondent stopped attending parenting time after February 2023 because a warrant was issued for his arrest, and he was afraid of being arrested. Because there is a reasonable likelihood the minor child would experience harm if returned to respondent, the trial court's finding that termination of his parental rights was proper under MCL 712A.19b(3)(j) was not clearly erroneous. See *In re Pederson*, 331 Mich App at 473 (evidence of physical and emotional harm can be considered for purposes of MCL 712A.19b(3)(j)). Cf. *In re Baham*, 331 Mich App 737, 758-759; 954 NW2d 529 (2020) (holding that termination was improper under MCL 712A.19b(3)(j) where the respondent's behavior during parenting time was appropriate, the respondent was making plans to support herself, and the respondent was "complaint with services and was seeking out additional services"). Because termination was proper under MCL 712A.19b(3)(j), we need not specifically consider the additional grounds upon which the trial court based its decision. See *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

## III. BEST INTERESTS

Respondent next argues the trial court clearly erred by finding termination of his parental rights was in the minor child's best interests. We disagree.

## A. STANDARD OF REVIEW

We review a trial court's best-interest determination for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Miller*, ___ Mich App at ___; slip op at 2.

## B. ANALYSIS

"The trial court must order the parent's rights terminated if the Department has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App at 713. "The trial court should weigh all the evidence available to determine the children's best interests." *Id*. This Court focuses on the child—not the parent—when reviewing best interests. *In re Atchley*, 341 Mich App at 346. When determining best interests,

> the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (quotation marks and citations omitted).]

The evidence presented shows respondent and the minor child were bonded. However, the evidence also supports the bond was not healthy for the minor child. JAU had spent a majority of his young life in care, which was traumatizing to him, and he was distressed by respondent's inconsistent attendance at parenting times and stints in jail. Additionally, respondent failed to address his issues with substance abuse, mental health, lack of income, and housing instability during the proceedings despite being offered extensive services. At the time of termination, respondent was incarcerated and unable to provide long-term stability and permanency for JAU which he desperately required. Respondent lacked commitment to completing services and often demonstrated an inability or unwillingness to get along with others. This was problematic because JAU required services due to his behavioral issues. In sum, the minor child's bond with respondent was not healthy for the minor child, who needed permanency and stability respondent could not provide. See *In re CR*, 250 Mich App 185, 196-197; 646 NW2d 506 (2002), overruled on other grounds by *In re Sanders*, 495 Mich 394; 852 NW2d 524 (2014) (holding because there was a "serious dispute on the record concerning whether [the respondent] had a healthy bond of any sort with her children," termination of her parental rights was in the children's best interests).

The parent-child bond is only one factor for the trial court to consider. See *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012). As already discussed, respondent failed to address his issues during the proceedings and was unable or unwilling to effectively parent JAU. Meanwhile, JAU was doing well in his relative placement. JAU was bonded with his great aunt, with whom he had been placed for a majority of the proceedings. The great aunt advocated for the minor child, was devoted to his well-being, and was willing to provide long-term care. Although JAU was placed with a relative, which weighs against termination, the record establishes the minor child required permanency and stability. See *id*. at 43 (holding a child's placement with relatives weighs against termination). As found by the trial court, respondent was unable to provide stability to the minor child. While the minor child's mother was working toward reunification with JAU at the time of termination of respondent's parental rights, "the parental rights of one parent may be terminated without the termination of the parental rights of the other parent. . . ." *In re Medina*, 317 Mich App 219, 232; 894 NW2d 653 (2016). A preponderance of the evidence establishes termination of respondent's parental rights was in JAU's best interests.

## IV. CONCLUSION

The trial court did not clearly err by finding a statutory ground for termination existed. The trial court also did not clearly err by determining termination was in the minor child's best interests. We affirm.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola