*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BRADDOCK/BRADDOCK-DOMINGUEZ, Minors.

UNPUBLISHED
March 14, 2024

No. 367277
Kent Circuit Court
Family Division
LC Nos. 22-050861-NA;
22-050862-NA; 22-050863-NA

Before: SWARTZLE, P.J., and REDFORD and YATES, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order terminating his parental rights to the minor children under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist) and MCL 712A.19b(3)(j) (child will be harmed if returned to the parent).[1] We affirm.

## I. FACTUAL BACKGROUND

Petitioner, the Department of Health and Human Services (DHHS), alleged that respondent has an extensive criminal history dating back to 2004, a substance-abuse problem, a history of domestic violence, including that in 2022 he punched the children's pregnant mother breaking her jaw requiring hospitalization resulting in his arrest and being charged with assault with intent to do great bodily harm. On June 29, 2022, the trial court conducted an adjudication trial and dispositional hearing at which respondent admitted facts alleged in the petition resulting in the trial court's taking jurisdiction over the children on the basis of the home's unfitness for them because of respondent's neglect and refusal to provide adequate care subjecting the children to a substantial risk of harm. The court conducted several review hearings to assess whether respondent made progress. Ultimately, the court agreed with petitioner and the children's guardian ad litem that termination of respondent's parental rights seemed the appropriate goal for the proceedings. DHHS filed a petition to terminate his parental rights on May 4, 2023. Between the last review hearing and the termination hearing, respondent was convicted of great bodily harm less than

---

[1] The children's mother, a respondent in the lower court, did not have her parental rights terminated and she is not a party to this appeal.

murder and moved from jail to prison to serve his prison sentence of 4 to 20 years with his earliest release date of May 19, 2026, and his latest release date of May 19, 2042. The trial court found that clear and convincing evidence existed requiring termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*) and MCL 712A.19b(3)(j). The trial court stated that respondent's barriers to reunification included "substance abuse, emotional stability, parenting skills, and domestic violence." The trial court explained that respondent's "only progress is in one area of parenting skills because he's returned worksheets and attended parenting times. But, as to the other issues, domestic violence, substance abuse, and emotional stability [respondent] has not made progress." The trial court also found that evidence established that termination of respondent's parental rights served the children's best interests. Therefore, the trial court terminated respondent's parental rights to the children.

Respondent now appeals.

## II. ANALYSIS

Respondent argues that the trial court erred by finding that reasonable efforts were made to reunify the children with him. We disagree.

"We review for clear error a trial court's decision regarding reasonable efforts." *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021). Additionally, "[t]his Court reviews for clear error a trial court's factual findings following a termination hearing." *In re Gonzales/Martinez*, 310 Mich App 426, 430; 871 NW2d 868 (2015). "A trial court's decision is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Olive/Metts Minors*, 297 Mich App 35, 41; 823 NW2d 144 (2012) (quotation marks and citation omitted).

Generally, "the Department has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017), citing MCL 712A.18f(3)(b) and (c), and MCL 712A.19a(2). Therefore, "when a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re Fried*, 266 Mich App 535, 542; 702 NW2d 192 (2005), citing MCL 712A.18f(1), (2), and (4). "As part of these reasonable efforts, the Department must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Hicks/Brown*, 500 Mich at 85-86. "The state is not relieved of its duties to engage an absent parent merely because that parent is incarcerated." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010).

In this case, reasonable services were provided to respondent considering his incarceration. Although respondent's first caseworker slowly got services started, the agency changed respondent's caseworker twice to ensure that respondent received proper services. At the beginning of this case, respondent told a Children's Protective Services supervisor "that he was not going to be attending court hearings," and he did not attend the preliminary hearing. Additionally, respondent did not "come forth to participate in anything involving his children" before the preliminary hearing. Nevertheless, between the preliminary hearing and the

adjudication hearing, the agency's family-finding specialist met with respondent in jail. At the dispositional hearing, the agency "identified [respondent's] needs as being substance abuse, emotional stability, parenting skills, [and] domestic relations . . . ."

In August 2022—four months after the petition filing—Alexia Balay, a Samaritas employee, took over this case. Balay explained that "not really any services were provided" to respondent until she took over the case. However, after Balay took over the case, she met with respondent and began sending respondent worksheets related to domestic violence, anger management, and child development. She provided him updates on the children's health and services, helped work out the logistics of sending letters and pictures between him and the children, and asked the jail if they could add domestic-violence classes to their educational materials. Balay testified that respondent refused to sign the parent-agency treatment plan because it "detailed that the children were present when the domestic violence occurred. And, he said that that's not true, so he didn't want to sign it."

In November 2022, Kelsey Bloom, a Samaritas employee, took over the case from Balay. Respondent remained in jail, so Bloom provided him worksheets, set up virtual parenting-time visits, and facilitated a better method of exchanging letters and pictures between him and the children. Bloom acknowledged that it took a while to set up parenting-time visits because of various scheduling and technical issues with the jail. Bloom explained that, while in jail, respondent indicated that he saw a therapist, began taking medications for his mental health, and participated in courses through the jail on his iPad. Respondent, however, was unable to verify those services through no fault of his own.

Bloom explained that when respondent got released from jail, she planned on referring him to counseling for substance-abuse and mental-health services. Respondent, however, revoked his plea in his criminal case, went to trial, was convicted of great bodily harm less than murder, and imprisoned where services were limited or not possible. Nevertheless, Bloom resumed sending respondent worksheets and attempted to reschedule parenting-time visits with the prison. Reasonable services were made available to him while he was incarcerated.

Respondent appears to argue that, because he completed the provided services, and his progress was still classified as poor, the services offered were inadequate. This argument lacks merit. The trial court explained that, although respondent appropriately participated in services, respondent did not demonstrate that he *benefited* from them. Although the DHHS "has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App at 248. But, "[n]ot only must respondent cooperate and participate in the services, [he] must benefit from them." *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014). Evidence established respondent's failure to benefit from the services: (1) he continued contact with the mother despite a no-contact order, (2) he lacked understanding of how domestic violence between himself and the mother could negatively impact the children, (3) he continued to deny drug use despite positive drug screenings, and (4) he made continuous interruptions in the trial court proceedings demonstrating his lack of self-control and inability to manage his anger issues. The trial court did not clearly err by finding that reasonable efforts were made to reunify respondent with the children.

Respondent further argues that the trial court clearly erred by terminating his parental rights under MCL 712A.19b(3)(c)(*i*) and MCL 712A.19b(3)(j). We disagree.

"In general, issues that are raised, addressed, and decided by the trial court are preserved for appeal." *Id*. at 703. The question whether sufficient evidence was presented to establish a statutory ground for termination was addressed and decided by the trial court; therefore, this issue is preserved. See *id*.

"A court may terminate a respondent's parental rights if one or more of the statutory grounds for termination listed in MCL 712A.19b(3) have been proven by clear and convincing evidence." *In re Olive/Metts Minors*, 297 Mich App at 40. We review the trial court's determination for clear error. *Id*. We give "deference to the trial court's special opportunity to judge the credibility of the witnesses." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009). If we conclude that the trial court did not clearly err by concluding that one statutory ground for termination existed, we do not need to address the additional grounds for termination. *Id*. at 461.

Under MCL 712A.19b(3)(c)(*i*), a trial court may terminate parental rights when "the conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." In this case, the record evidence supports the trial court's conclusion that clear and convincing evidence established that the conditions that led to adjudication continued and no reasonable likelihood existed that the conditions would be rectified within a reasonable time. This Court has held that termination is proper when "the totality of the evidence amply supports that [respondent] had not accomplished any meaningful change in the conditions existing by the time of the adjudication." *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014).

In *In re Kaczkowski*, 325 Mich App 69, 75-76; 924 NW2d 1 (2018), the mother's parental rights were terminated under MCL 712A.19b(3)(c)(*i*) despite her participation in services since "there was concern that despite participating in services, [the mother] did not benefit from those services, or at least did not benefit sufficiently." The mother was repeatedly told that she was not allowed to have any contact with the father who was in prison and "prohibited from having contact with minors after a prior conviction for child molestation"; however, the mother continued to contact the father. *Id*. at 72, 76. The mother's therapist testified that the mother "continued to lack insight and that she was unable or unwilling to take responsibility for her actions. The therapist also testified that respondent had shown an increase in her rage and an inability to control herself." *Id*. at 76.

In this case, the conditions that led to adjudication regarding respondent were "substance abuse, emotional stability, parenting skills, [and] domestic relations . . . ." The trial court found termination proper under MCL 712A.19b(3)(c)(*i*) because, although he made progress toward his parenting-skills barrier, he did not make progress "as to the other issues, domestic violence, substance abuse, and emotional stability . . . ."

Although respondent was offered reasonable services, the record indicates that he failed to benefit. Therefore, even if he made some progress, the evidence established that he only minimally progressed and the conditions that led to adjudication continued to exist.

MCL 712A.19b(3)(c)(*i*) requires the trial court to find that respondent would be unable to rectify the conditions within a reasonable time. "[T]he Legislature did not intend that children be left indefinitely in foster care, but rather that parental rights be terminated if the conditions leading to the proceedings could not be rectified within a reasonable time." *In re Dahms*, 187 Mich App 644, 647; 468 NW2d 315 (1991). The determination of what constitutes a reasonable time for the conditions to be rectified includes how long it would take for the parent to improve his or her parenting skills and how long the child can wait for the parent's improvement. *Id*. at 648.

In this case, 182 or more days had elapsed since the issuance of an initial dispositional order. The trial court found that respondent's earliest release date from prison could be May 2026, a period "too long for the children to wait" for respondent to address his barriers and be able to provide permanency, stability, and finality for the children. At the time of the termination hearing, the children had already been in a foster home for approximately one year—the children were three years old, two years old, and one year old at the time of the termination hearing. Therefore, even if respondent rectified his barriers, by his earliest release date from prison, the children would remain without permanence and stability for four additional years. Considering the time that had passed since the opening of the case, respondent's incarceration, and his failure to rectify his barriers to reunification, the trial court did not clearly err by finding that he would not be able to rectify the conditions that led to adjudication in a reasonable time. Accordingly, the trial court's findings pursuant to MCL 712A.19b(3)(c)(*i*) were not clearly erroneous, and the trial court did not err by terminating respondent's rights.[2]

Respondent further argues that the trial court erred by finding that termination of his parental rights served the children's best interests. We disagree.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App at 40. "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). We review the trial court's determination for clear error. *In re Olive/Metts Minors*, 297 Mich App at 40.

"In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider a parent's history of

---

[2] We need not address the remaining statutory ground relied upon by the trial court in this case. See *In re HRC*, 286 Mich App at 461. Nevertheless, having reviewed the entire record, the trial court's findings under MCL 712A.19b(3)(j) also were not clearly erroneous, and the trial court did not err by also terminating respondent's rights on this basis.

domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714. At the best-interest stage of the proceeding, the trial court's focus is on the child, not the parent. *In re Moss*, 301 Mich App at 81.

In this case, the trial court properly considered evidence that established: (1) respondent's inability to understand the impact that domestic violence can have on children; (2) his inability to take accountability for his substance abuse; (3) the lack of bond between him and the children; and (4) his incarceration time line, which was "too long for the children to wait" for respondent to address his barriers and be able to provide permanency, stability, and finality for the children. The trial court also considered that two of the children had special needs that required structure, care, and support, which the children's preadoptive foster home could provide. Overall, the trial court considered the applicable factors and did not clearly err by finding that a preponderance of the evidence established that termination of respondent's parental rights served the children's best interests.

Affirmed.

/s/ Brock A. Swartzle
/s/ James Robert Redford
/s/ Christopher P. Yates

-6-