*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. A. JOHNSON, Minor.

UNPUBLISHED
May 16, 2024

No. 368821
Isabella Circuit Court
Family Division
LC No. 22-000153-NA

Before: JANSEN, P.J., and MURRAY and O'BRIEN, JJ.

PER CURIAM.

Respondent[1] appeals by right the trial court's order terminating her parental rights to her minor child, AAJ, under MCL 712A.19b(3)(c) (conditions that led to adjudication continue to exist),[2] and (g) (failure to provide proper care or custody).[3] We affirm.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On October 14, 2022, respondent delivered AAJ, and both respondent and AAJ tested positive for methamphetamines. Two days later, the Midland Circuit Court ordered that AAJ be taken into protective custody. She was placed into the same foster home as her half-brother, JJ, who was also born meth-positive and to whom respondent's rights were terminated just months prior in April 2022.

---

[1] The trial court was unable to establish a legal father in the case.

[2] The Department of Health and Human Services (DHHS) petitioned for termination pursuant to MCL 712A.19b(3)(c), in part, and from its findings on the record, the court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*) and (g). It is unclear, however, whether the court also relied on MCL 712A.19b(3)(c)(*ii*), as petitioner asserts on appeal.

[3] The trial court did not find sufficient evidence to terminate respondent's parental rights under MCL 712A.19b(3)(j).

The case was transferred to Isabella County, and at the adjudication on December 9, 2022, respondent pleaded to the following allegations in the amended petition filed by the Department of Health and Human Services (DHHS):

> Respondent had her rights terminated to JJ on April 29, 2022. She did not follow through with services and continued to actively use substances.

> Respondent was admitted to the hospital on October 14, 2022, for an emergency C-section for AAJ. She had no prenatal care during the pregnancy and used meth that day and throughout the pregnancy.[4]

At the time of the dispositional hearing on February 6, 2023, respondent had barriers to reunification beyond substance abuse issues, including inadequate housing, no employment or income, and transportation difficulties. Her initial caseworker, Chelsea Peterson, testified that she discussed Social Security Income (SSI) with respondent because respondent had expressed some medical history that might make her eligible, and referred respondent to Baby Court with Community Mental Health (CMH) for therapy and other services, including potentially substance abuse counseling. She also informed the court that respondent was completing drug screenings and attending supervised parenting time, although she missed some as a result of transportation issues, so bus passes were discussed.

Nicole Chapman took over as caseworker in March, 2023. Although respondent continued participating in drug screens, only testing positive for THC throughout AAJ's time in the custody of the court,[5] and supervised parenting time, she missed some as a result of failing to confirm the visits in advance. And she failed to secure suitable housing and employment or other income, despite referrals to Michigan Works and various housing programs, as well as discussions regarding SSI. Further, respondent's participation in services with Baby Court and CMH was limited. She was moved to case management for lack of engagement, and did not begin actively participating again until just prior to the termination hearing.

The court acknowledged the difference in respondent's efforts with AAJ's case in comparison to JJ's case, and urged DHHS at the July 26, 2023 reviewing hearing to delay the filing of a termination petition to give respondent more time to comply with and benefit from the case service plan, but DHHS ultimately filed its termination petition on September 20, 2023, requesting termination of respondent's parental rights under MCL 712A.19b(3)(c), (g), and (j), and the court terminated respondent's rights to AAJ on October 31, 2023.

---

[4] The amended petition alleged that respondent told hospital staff she used both methamphetamines and heroin throughout her pregnancy, but at the adjudication respondent testified that it was methamphetamines only, not heroin.

[5] Respondent had a number of presumptive positive tests for methamphetamines upon initial testing, but additional testing of the samples yielded negative results. The court asked DHHS to look further into the issue, and a letter from the laboratory states that presumptive positives which subsequent testing reveal to be negative should ultimately be considered negative tests.

## II. STATUTORY GROUNDS

" 'In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met.' " *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326, 333; 985 NW2d 912 (2022), quoting *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). "We review for clear error a trial court's ruling that a statutory ground for termination has been proved by clear and convincing evidence." *In re Smith*, 324 Mich App 28, 46; 919 NW2d 427 (2018). " 'A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses.' " *In re Sanborn*, 337 Mich App 252, 272-273; 976 NW2d 44 (2021), quoting *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

Again, DHHS petitioned for termination under MCL 712A.19b(3)(c), (g), and (j). The termination order does not specify the statutory grounds relied on by the court, but on the record the court found insufficient evidence to terminate respondent's rights under MCL 712A.19b(3)(j), and sufficient evidence to terminate under MCL 712A.19b(3)(c)(*i*)[6] and (g). It is unclear, however, whether the court also relied on MCL 712A.19b(3)(c)(*ii*), as DHHS asserts on appeal.

We need not answer the question, because we hold that the court did not clearly err by terminating respondent's rights to AAJ under MCL 712A.19b(3)(g). See *In re Trejo*, 462 Mich 341, 360; 612 NW2d 407 (2000) (only one statutory ground for termination must be established). Termination is warranted under MCL 712A.19b(3)(g) where a "parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age."

The trial court's findings under MCL 712A.19b(3)(g) are supported by clear and convincing evidence. Respondent tested negative for methamphetamines throughout the case, which the court acknowledged and praised, but as the court found, respondent did not participate in substance abuse counseling. Given respondent's history of DHHS involvement and termination as a result of substance abuse, and the psychological evaluation she completed which recommended that she participate in high intensity substance abuse counseling, the court appropriately questioned respondent's ability to provide proper long-term care for AAJ without addressing her substance abuse issues more comprehensively. Further, respondent lived with her

---

[6] Termination is appropriate under MCL 712A.19b(3)(c)(*i*) when the conditions that led to adjudication continue to exist, and the court stated:

> The first basis was made to rectify conditions. The parent was the respondent proceeding (inaudible) 182 days or more but lapsed since the issuance of the initial disposition order of the Court. And by clear and convincing evidence, the Court finds that the conditions that led to adjudication continue to exist. There's no right, reasonable likelihood will be rectified within a reasonable timeframe considering the child's age."

mother at times throughout the proceedings, including at the time of the termination hearing, who herself had a history of methamphetamine use.

Without specifically referencing MCL 712A.19b(3)(g), respondent argues on appeal that she was compliant with her treatment plan at the time of the termination hearing, citing her enrollment in CMH services and consistent attendance. While Chapman testified that respondent had started parenting classes with CMH just prior to the termination hearing, the record demonstrates that respondent's participation in counseling services, including parenting classes, was inconsistent at best throughout the case. Of 23 scheduled visits with Chelsea Bentley, her CMH therapist, respondent missed 10. As a result of lack of engagement, she was moved to case management and, again, did not demonstrate interest in meaningfully participating again until the threat of termination. Respondent's lack of participation had significant consequences on her development because Peterson explained that respondent was referred to Baby Court with CMH in an effort to consolidate several services, including therapy, substance abuse counseling, and parenting classes. Accordingly, despite respondent's arguments to the contrary, she failed to fully participate in and benefit from important portions of her case service plan. *In re Kaczkowski*, 325 Mich App 69, 77; 924 NW2d 1 (2018) (" 'A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody.' " (Citation omitted.)

Respondent herself testified at the termination hearing that she was not currently in a position to care for AAJ, and that it could take six months for her to be ready, or a year, although she hoped it would not be that long. She identified housing and employment as barriers to providing proper care. The court appropriately took this testimony into consideration. Respondent stated that it would be impossible for AAJ to live with her until she obtained her own housing, which she had yet to do over a year after AAJ's removal, despite the provision of services. And she was not then, nor had she ever been, employed. Given that AAJ had been in care for a year, respondent did not begin taking certain aspects of her case service plan seriously until just before the termination hearing, and respondent had a prior termination under similar circumstances, the court understandably found that another six months to a year, assuming respondent followed through with her treatment plan, was an unreasonable amount of time. AAJ would have been in care since birth for a year-and-a-half to two years by that time.

Respondent asserts that "little was done to assist [her] with a seizure disorder other than referring her to a primary doctor. Certainly, that special need of Appellant's could have been accommodated with special services." However, there is evidence in the record that workers knew of respondent's seizures, and attempted to address the health issue. Bentley testified at the termination hearing that respondent mentioned her seizure disorder so she offered assistance in finding a primary care provider. And, while respondent testified that she did not remember her caseworkers asking for medical documentation regarding her seizures, Chapman testified that respondent began speaking about her seizures in June 2023, and that she asked respondent several times for medical documentation of the seizures, but respondent did not sign and return a release of information to Chapman until late August or early September. Respondent may disagree with

this testimony, but we "must defer to the special ability of the trial court to judge the credibility of witnesses." *In re Gach*, 315 Mich App 83, 93; 889 NW2d 707 (2016).[7]

## III. BEST INTERESTS

"Even if the trial court finds that the Department has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). We review a trial court's best-interests determination for clear error. *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022). "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5); *In re Pederson*, 331 Mich App 445, 476; 951 NW2d 704 (2020). To make this determination, the trial court should weigh all evidence available and may consider

> the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. Other considerations include the length of time the child was in care, the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all, and compliance with the case service plan. [*In re Atchley*, 341 Mich App at 346-347 (quotation marks and citation omitted).]

Additionally, the court may consider a parent's history of domestic violence, the parent's visitation history with the child, the child's well-being while in care, and the possibility of adoption. *In re Pederson*, 331 Mich App at 476.

---

[7] Respondent does not argue that the court erred by finding sufficient evidence to terminate her rights under MCL 712A.19b(3)(g) because she was financially unable to provide proper care or custody for AAJ, but if she had, that argument would also fail. Although the evidence demonstrates that housing and employment or income remained significant barriers to reunification, respondent did not fully take advantage of the services offered to rectify those conditions. Respondent also proffered that she could not apply for jobs because her identification had been stolen by her mother's ex-boyfriend in 2019, but at the October 11, 2023 review hearing, she had little explanation for not replacing them, saying she was not really sure how to get her Social Security Card. It was not until the termination hearing that she testified she had obtained her birth certificate a week prior and would get her identification that day. Additionally, respondent was provided a number of housing resources, some of which she attempted to take advantage of, and others which she delayed looking into. "While the [DHHS] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

The trial court's conclusion that termination would be in AAJ's best interests was supported by a preponderance of the evidence. AAJ had been living with her half-brother in a foster home outside of respondent's care since her birth over a year before the termination hearing. Testimony indicated that she was well taken care of and bonded with her foster family, that the foster home provided a stable environment, and that the family was willing to adopt should the court order termination, just as they had adopted AAJ's half-brother JJ. In comparison, respondent lacked suitable housing for AAJ, had not yet obtained employment or another form of income, and had only just begun to fully engage in parenting classes and other services to prepare herself for reunification at the time of the termination hearing. Accordingly, the trial court did not clearly err by finding termination of respondent's parental rights to be in AAJ's best interests.

Affirmed.

/s/ Kathleen Jansen
/s/ Christopher M. Murray
/s/ Colleen A. O'Brien