*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* D. D. COOPER, Minor.

UNPUBLISHED
July 18, 2024

No. 368999
Wayne Circuit Court
Family Division
LC No. 2021-000948-NA

Before: LETICA, P.J., and BOONSTRA and MARIANI, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to DC, pursuant to MCL 712A.19b(3)(g) (proper care and custody) and (j) (reasonable likelihood of harm).[1] We affirm.

## I. FACTUAL BACKGROUND

Petitioner filed a permanent custody petition that alleged it was contrary to DC's welfare to remain with respondent because of her chronic substance abuse, unfit home, and domestic violence issues with DC's father. The trial court authorized the petition after finding that the allegations were substantiated. Testimony throughout the case established that DC was born positive for tetrahydrocannabinol (THC) and opiates. As a result, DC experienced tremors and withdrawal symptoms that were treated with morphine. Respondent admitted that she used

---

[1] Respondent argues that the trial court erred by terminating her parental rights under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), (c)(*ii*) (failure to rectify other conditions), (g), and (j). But the trial court only terminated respondent's parental rights to DC under MCL 712A.19b(3)(g) and (j). The source of respondent's confusion may be that the trial court found statutory grounds to terminate respondent's parental rights to DJC, DC's older sister, under all four statutory grounds. Ultimately, the trial court did not terminate respondent's parental rights to DJC, concluding that termination was not in DJC's best interest. Because this appeal involves DC, we will only address termination under MCL 712A.19(3)(g) and (j).

nonprescribed Vicodin and smoked marijuana daily while pregnant with DC. Respondent also used heroin until she discovered she was pregnant. After DC was released from the hospital, she lived with her maternal grandmother, who was willing to adopt her. DC bonded with her grandmother and did well in this placement.

Respondent's relationship with DC's father was permeated with domestic violence. During one incident, DC's father inflicted multiple injuries, resulting in respondent's hospitalization. During a separate incident, DC's father pointed a gun at DJC, DC's older sister. Respondent, however, continued to live with DC's father and planned to parent with him. Even after the trial court expressly ordered respondent not to have contact with DC's father, she disregarded that order.

Respondent also failed to obtain stable housing. Respondent's first home, where she resided with DC's father, was unfit because it was infested with cockroaches and flies, had a pot of rotting food in the kitchen sink, had leaking ceilings, and the walls and surfaces were filthy. Respondent later moved into her deceased grandmother's home, which was dilapidated and subject to imminent foreclosure because she failed to make her residency legal.

The trial court removed DJC in 2021 because of respondent's problems with domestic violence and substance abuse. In DJC's case, the trial court gave respondent a treatment plan, requiring respondent to engage in parenting classes, domestic violence counseling, substance abuse treatment, individual therapy, family therapy, and parenting time. Respondent began some of the services, but never completed any of them. Moreover, even when respondent engaged in services, she did not benefit from them. Respondent did not engage in resources provided to address her substance abuse, housing, or employment. Respondent provided no proof of income or employment. Respondent also did not maintain regular communication with the foster care workers. Respondent only attended 16 of 31 visits with DC.

After the hearing, the trial court terminated respondent's parental rights to DC under MCL 712A.19b(3)(g) and (j). And the trial court found that termination was in DC's best interests.

## II. STATUTORY GROUNDS

On appeal, respondent argues that the trial court clearly erred by finding statutory grounds to terminate respondent's parental rights. Respondent asserts that she provided material and financial support for DC, was successfully working on her treatment plan, regularly visited DC, and was appropriate during visits. Therefore, she was positioned to rectify the issues that led to DC's removal.

"We review for clear error a trial court's finding of whether a statutory ground for termination has been proven by clear and convincing evidence. A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Richardson*, 329 Mich App 232, 251; 961 NW2d 499 (2019) (quotation marks and citation omitted).

Parents "have a fundamental right to direct the care, custody, and control" of their children. *In re Ferranti*, 504 Mich 1, 21; 934 NW2d 610 (2019). "To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). Pursuant to MCL 712A.19b(3)(g), a court may terminate parental rights if it finds clear and convincing evidence that "[t]he parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child, and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." Though respondent claimed that she worked two jobs during the summer of 2023, she never provided proof of employment. Respondent was also not receiving social security. MCL 712A.19b(3)(g) states that the trial court must find clear and convincing evidence that the respondent was financially able to provide proper care and custody before terminating parental rights under MCL 712A.19b(3)(g). The trial court did not do so here.

But a trial court need only find one statutory ground was proven by clear and convincing evidence to terminate a respondent's parental rights. *In re Ellis*, 294 Mich App at 32. The trial court determined that termination of respondent's parental rights was warranted under MCL 712A.19(b)(3)(j). That subsection permits a court to terminate parental rights if it finds clear and convincing evidence that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." Exhibiting behavior that would put a child at a risk of harm is sufficient to justify terminating parental rights under MCL 712A.19b(3)(j). *In re White*, 303 Mich App 701, 712-713; 846 NW2d 61 (2014). The "harm contemplated under MCL 712A.19b(3)(j) includes emotional harm as well as physical harm." *In re Sanborn*, 337 Mich App 252, 279; 976 NW2d 44 (2021).

The trial court did not clearly err by finding a statutory ground to terminate respondent's parental rights under MCL 712A.19b(3)(j). See *In re Kaczkowski*, 325 Mich App 69, 77; 924 NW2d 1 (2018) ("[A] parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." (quotation marks and citation omitted)). Respondent failed to complete any part of her case service plan. Respondent initially engaged in some services, but did not complete any of them or demonstrate that she benefitted from them. See *In re Atchley*, 341 Mich App 332, 339; 990 NW2d 685 (2022) ("[A] respondent-parent must both participate in services and demonstrate that they sufficiently benefited from the services provided." (quotation marks and citation omitted)). Further, respondent only requested referrals before hearings so that she would have something to report to the trial court, indicating that she was not interested in complying with her treatment plan.

Respondent's refusal to cease contact with DC's father also supported the trial court's finding under MCL 712A.19b(3)(j). The presence of DC's father in the home created a risk of harm because he previously severely injured respondent and pointed a gun at DJC. Though DC's father did not point the gun at DC, his treatment of DJC was indicative of how he would treat DC. See *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020) (explaining that a parent's treatment of one child is probative of how they may treat other children). Since respondent refused to cease contact with DC's father or press criminal charges against him, it was likely that DC would be exposed to domestic violence if returned to respondent. See *White*, 303 Mich App at 713 (holding that exhibiting behavior that would put children at a risk of harm is sufficient to justify terminating parental rights under MCL 712A.19b(3)(j)).

In *In re Archer*, 277 Mich App 71, 75-76; 744 NW2d 1 (2007), a respondent-mother's "unwillingness to take the necessary precautions to ensure her children's safety from known sex offenders and her history of failing to protect her children from physical injury and abuse made it reasonably likely that the children would be harmed if they were returned to her home." In this case, respondent showed she was unwilling to take the necessary precautions to ensure that DC was not exposed to respondent's abusive partner.

Additionally, a Children's Protective Services (CPS) supervisor opined that DC would be at a substantial risk of harm if returned to respondent because of respondent's continued drug abuse. Respondent's drug abuse during pregnancy caused DC to become addicted to drugs while in utero, necessitating withdrawal treatment and hospitalization after her birth. Compare *In re Simonetta*, 340 Mich App 700, 704; 987 NW2d 919 (2022) (the respondent's child, who tested positive for two different opioids and THC, "did not require any medication or medical interventions of any kind"). This directly harmed DC. Respondent's drug abuse could lead to DC's harm in the future because the use of powerful drugs, like heroin, can debilitate a caregiver from providing proper care to a child. See *In re White*, 303 Mich App at 713 (exhibiting behavior that would put the child at a risk of harm is sufficient to justify terminating parental rights under MCL 712A.19b(3)(j)). Respondent's drug abuse was so serious that the trial court ordered her to be hospitalized in a psychiatric ward. And respondent lost custody of DJC partially because of her long-term drug abuse. Accordingly, respondent's drug abuse also supported the trial court's finding a statutory ground for termination under MCL 712A.19b(3)(j).

## III. BEST INTERESTS

Respondent also argues that the trial court clearly erred by terminating respondent's parental rights because DC was placed with a relative, respondent was diligently working on her treatment plan, was no longer involved with DC's father, was free of illegal drugs, and had a bond with DC. Further, because the trial court did not terminate respondent's parental rights to DJC, respondent argues there was no reason to terminate respondent's parental rights to DC given that both girls were similarly situated. We disagree.

"Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests." *In re Keillor*, 325 Mich App 80, 93; 923 NW2d 617 (2018) (quotation marks and citation omitted). "Best interests are determined on the basis of the preponderance of the evidence." *Id.* (quotation marks and citation omitted). The trial court should consider all of the evidence when determining whether it is in the child's best interests to terminate parental rights. *In re White*, 303 Mich App at 713. The trial court should consider "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id.* (quotation marks and citation omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id.* at 714.

We review a "trial court's determination regarding the children's best interests" for clear error. *In re White*, 303 Mich App at 713. Clear error exists when the reviewing court has "a

-4-

definite and firm conviction that a mistake has been made." *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (2020) (quotation marks and citation omitted).

At trial, a foster care specialist testified that DC did not have a strong bond with respondent, and DC was hesitant to go with respondent during a visit in July 2023. The record does not indicate that DC and respondent shared a close bond because respondent only attended 16 of 31 visits with DC. In contrast, DC was bonded to her grandmother and had an established home with her. The foster care specialist also testified that respondent was "more or less" appropriate during visits, but respondent failed to complete her court-ordered parenting classes or benefit from the classes in which she engaged. The foster care specialist further opined that allowing DC's grandmother to adopt DC would provide DC with permanency, stability, and finality. On the other hand, respondent failed to obtain suitable or stable housing.

Respondent's history of domestic violence with DC's father also weighed in support of termination. See *In re White*, 303 Mich App at 714 (holding that a respondent's history of domestic violence is a relevant factor in a best-interests analysis). Respondent's history of domestic violence with DC's father was especially relevant to the trial court's best-interests finding because respondent continued to have contact with DC's father, despite a court order to the contrary. Respondent's refusal to cease contact with DC's father indicated that there was a reasonable likelihood that DC would be exposed to domestic violence if she was returned to respondent, thus demonstrating that termination of respondent's parental rights was in DC's best interests.

Respondent's failure to comply with her case service plan further weighed in support of the trial court's best-interests finding along with respondent's failure to consistently visit DC. *Id*. Additionally, the maternal grandmother's desire to adopt DC weighed in support of termination, as did the fact that DC was doing well in that placement. *Id*.

And, contrary to respondent's argument, the trial court did consider the fact that DC was placed with a relative prior to terminating respondent's parental rights. See *In re Olive/Metts*, 297 Mich App 35, 44; 823 NW2d 144 (2012) (holding that the trial court is "required to explicitly address each child's placement with relatives at the time of the termination hearing"). Nevertheless, the trial court determined that termination was in DC's best interests in light of respondent's domestic violence issues and her failure to engage in services. *In re Gonzales/Martinez*, 310 Mich App 426, 435; 871 NW2d 868 (2015) (although a child's placement with a relative weighs against termination, a court may determine that it is in the child's best interest to terminate a respondent's parental rights).

Finally, respondent argues that termination could not have been in DC's best interests because DC was similarly situated with DJC, and the trial court found that termination was not in DJC's best interests. See *White*, 303 Mich App at 715 ("[I]f the best interests of the individual children *significantly* differ, the trial court should address those differences when making its determination of the children's best interests."). DJC and DC were not similarly situated. At the time of the proceedings, DJC was 16 years old, and she expressly testified that she did not want respondent's parental rights to her terminated. The trial court only preserved respondent's parental rights to DJC because DJC testified that she did not want respondent's parental rights terminated. The trial court expressly stated that it did not believe respondent was going to "get it together" in order to have DJC returned to her care. On the other hand, DC entered care when she was an infant

and was 15 months old on the last day of the termination hearing. Thus, DC was in need of permanence and stability and she could not verbally express a preference regarding respondent's parental rights. Additionally, DC required a caretaker while DJC was two years from becoming a legal adult, MCL 722.52(1). Accordingly, we conclude that the trial court did not clearly err by finding that termination was in DC's best interests, despite its conclusion that termination was not in DJC's best interests.

Affirmed.

/s/ Anica Letica
/s/ Mark T. Boonstra
/s/ Philip P. Mariani