*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* M. ALLEN, Minor.

UNPUBLISHED
November 08, 2024
10:43 AM

No. 371200
Grand Traverse Circuit Court
Family Division
LC No. 17-004362-NA

Before: GADOLA, C.J., and SWARTZLE and LETICA, JJ.

PER CURIAM.

Respondent-mother appeals by right the termination of her parental rights to the minor child, MJA, pursuant to MCL 712A.19b(3)(j) (reasonable likelihood child will be harmed if returned to parent). We affirm.

## I. FACTS AND PROCEDURAL HISTORY

MJA is the sixth of respondent-mother's children to be the subject of a termination proceeding. The first proceedings commenced in 2017 and ultimately resulted in respondent-mother voluntarily relinquishing her parental rights to her two oldest children. Proceedings commenced regarding the two next-youngest children in 2019 and 2020, culminating in their return to respondent-mother's care. Proceedings commenced regarding the three middle children in 2022, and, when MJA was born in late 2023, those proceedings were ongoing and a termination hearing was pending. Respondent-mother voluntarily relinquished her rights to those children halfway through that termination hearing. The petition regarding MJA was filed on the day MJA was born because respondent-mother was homeless, and planned on living with MJA at a friend's house who was known to cook cocaine. Although respondent-mother was offered parenting time with MJA, she missed the one appointment that was scheduled before all of her parenting time was suspended because of her conduct regarding the other children.

Respondent-mother suffers from serious mental health problems. The evidence established that she had longstanding issues with mental health, homelessness, substance abuse, and neglectful and unsafe parenting. Respondent had been hospitalized for her psychiatric diagnoses. She was combative, unstable, and often shouted at caseworkers. She was provided services throughout all

-1-

of the termination proceedings dating back to 2017, and, while she did regain her children briefly, she never addressed any of her core problems that precluded her from parenting the children safely. Following the adjudication regarding MJA, the trial court ordered reasonable efforts at reunification and indicated that respondent might be granted parenting time if she could demonstrate as little as a month of consistently attending therapy. Respondent-mother failed to consistently attend therapy. Furthermore, she remained homeless, and she was removed from two shelters because of her conduct and was arrested for trespassing the night before the termination hearing. The trial court found by clear and convincing evidence that MJA would be harmed if returned to her care under MCL 712A.19b(3)(j)[1] so it terminated respondent-mother's parental rights.

## II. STANDARD OF REVIEW

This Court reviews for clear error the trial court's factual finding that petitioner made reasonable efforts at reunification. *In re Atchley*, 341 Mich App 332, 338; 990 NW2d 685 (2022). "We review for clear error both the court's decision that a ground for termination has been proven by clear and convincing evidence and, where appropriate, the court's decision regarding the child's best interest[.]" *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (citation omitted). Related questions regarding interpretation of statutes or procedural rules are reviewed de novo. *In re Medina*, 317 Mich App 219, 227; 894 NW2d 653 (2016).

## III. ALLEGED TERMINATION AT INITIAL DISPOSITIONAL HEARING

Respondent-mother argues that the trial court terminated her parental rights under MCR 3.977(E) at the initial dispositional hearing. The trial court did not terminate respondent's parental rights at the initial dispositional hearing, but did so a little over two months later during a termination hearing.

The initial dispositional hearing was held on March 14, 2024. The order of disposition, which was entered the same day, scheduled a termination hearing. But that order also ordered that petitioner must make reasonable efforts to reunify respondent and MJA, and that petitioner could give respondent-mother supervised parenting time. The trial court encouraged respondent-mother to continue mental health treatment and pursue psychiatric medication, and it emphasized that it would not be opposed to ordering parenting time if respondent-mother could demonstrate some consistency with her treatment, possibly as little as a month. The termination hearing occurred on May 29, 2024, and respondent-mother was permitted to testify, call a witness, and present arguments at that hearing. While the dispositional hearing was essentially contemporaneous with

---

[1] The trial court mentioned but did not make any findings regarding MCL 712A.19b(3)(g) (failure to provide proper care or custody despite financial ability to do so and no expectation parent will do so within a reasonable time). We will not address that statutory ground because only one statutory ground need be proven. *In re Martin*, 316 Mich App 73, 90; 896 NW2d 452 (2016).

the adjudication trial, it was unambiguously a different proceeding from the termination hearing. In short, the trial court did not terminate respondent-mother's parental rights to MJA at the initial dispositional hearing, so MCR 3.977(E) does not apply.

## IV. REASONABLE EFFORTS

Respondent-mother argues that termination was improper because there were no aggravated circumstances that would excuse petitioner from making reasonable efforts at reunifying her with MJA, irrespective of what transpired during the proceedings regarding the other children. Because there were no aggravating circumstances, the trial court required petitioner to make reasonable efforts. We find petitioner's efforts were reasonable under the circumstances.

In the absence of aggravating circumstances, petitioner must make reasonable efforts to reunify a child with the family in all cases. *In re Simonetta*, 340 Mich App 700, 707; 987 NW2d 919 (2022). Those reasonable efforts include creation of a service plan outlining the steps the parent and petitioner must "take to rectify the issues that led to court involvement and to achieve reunification." *Id*. (quotation marks and citation omitted). Respondents have a reciprocal obligation to participate in and demonstrate benefit from the services offered by petitioner. *In re Atchley*, 341 Mich App at 339. "Not only must respondent cooperate and participate in the services, she must benefit from them." *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014). A parent's failure to participate in, comply with, and benefit from a service plan is evidence that the parent will not be able to provide the child with proper care and custody and that the child will be harmed if returned to the parent's care. *In re Kaczkowski*, 325 Mich App 69, 77; 924 NW2d 1 (2018).

Here, the trial court did not excuse petitioner from making reasonable efforts. The order following the preliminary hearing expressly ordered that "[r]easonable efforts shall be made to preserve and reunify the family to make it possible for the child(ren) to safely return home." At the adjudication trial, the trial court refused to consider petitioner's previous efforts to reunify respondent with her other children sufficient to "satisfy the reasonable efforts requirement," and it again ordered that reasonable efforts must be made for reunification with MJA. The trial court again ordered that reasonable efforts must be made at reunification following the dispositional hearing, and it further ordered that if respondent-mother could show as little as a month of consistent attendance at mental health appointments, respondent-mother's parenting time could be resumed. The termination hearing was scheduled for more than two months after the disposition.

Furthermore, petitioner actually made reasonable efforts. Respondent-mother argues that most of petitioner's efforts were made during the other proceedings involving the older children. While this is true, petitioner also created an initial case service plan for this case on January 19, 2024, almost two months before the adjudication trial and more than four months before the termination hearing, and respondent-mother signed that service plan. Respondent-mother contends that she had only seven weeks to utilize the services, but, in fact, she had almost four months from the creation of the initial service plan.

Respondent-mother contends that she utilized and benefited from the services, but that is not evidenced by the record. While she was somewhat actively looking for housing, there was no evidence that she was doing anything differently from what she had been doing all along, waiting

to hear back about various housing units, which was prolonged by respondent's history of unpaid utility bills at previous apartments. The evidence also reflected that respondent only attended one therapy appointment, and she was only doing so begrudgingly and without any recognition of why she was there. Respondent took drug screens, but although they showed only one instance of illicit substances since MJA's removal, she provided an implausible excuse for that positive result, and they showed that she was being inconsistent about taking her prescribed medication. Furthermore, she was not taking psychiatric medication as recommended, and refused to work with a psychiatrist despite being told she needed to do so.

Respondent-mother misconstrues the significance of the proceedings in the prior terminations by contending that her rights to MJA were terminated directly because of her conduct regarding the older children. In fact, her conduct regarding the older children was instead used as evidence that she had a longstanding inability to address her problems. The trial court only required her to show a month of consistency to show that there was even a possibility that this time could be different. Respondent did not attend therapy regularly, despite having known from the outset that weekly therapy attendance was required. Respondent-mother's hostility only increased, and her arrest and inability to control herself in the courtroom during the termination hearing undermines any suggestion that she was making meaningful progress.

Under the circumstances, which include the prior termination proceedings and respondent-mother's conduct, nonparticipation in services, and failure to benefit during those prior proceedings, the trial court did not clearly err by finding petitioner's efforts at reunification specifically regarding MJA to be reasonable.

## V. STATUTORY GROUNDS FOR TERMINATION

Respondent-mother argues that the trial court erred by finding at least one statutory ground for termination proven by clear and convincing evidence, mostly premised on the argument that the trial court erroneously relied on the doctrine of anticipatory neglect. The trial court properly considered respondent-mother's conduct and nonparticipation in services specifically regarding MJA, and it properly found at least one statutory ground for termination proven.

"A court may terminate a respondent's parental rights if one or more of the statutory grounds for termination listed in MCL 712A.19b(3) have been proven by clear and convincing evidence." *In re Olive/Metts Minors*, 297 Mich App at 40. "[O]nly a single statutory ground need be established in support of termination." *In re Martin*, 316 Mich App 73, 90; 896 NW2d 452 (2016). The trial court found MCL 712A.19b(3)(j) (reasonable likelihood child will be harmed if returned to parent) proven by clear and convincing evidence. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App at 40.

"The doctrine of anticipatory neglect provides that how a parent treats one child is probative of how that parent may treat other children." *In re Mota*, 334 Mich App 300, 323; 964 NW2d 881 (2020). The doctrine of anticipatory neglect has little probative value if two children are situated significantly differently. *In re Kellogg*, 331 Mich App 249, 259-260; 952 NW2d 544 (2020). "This doctrine inherently acknowledges that no actual detrimental act has occurred" to the child at issue. *In re Christie*, 339 Mich App 1, 6; 981 NW2d 172 (2021). The doctrine permits an

inference that a parent's treatment of prior children can be "good reason to fear that the second child, when born, will also be neglected or abused." *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2021).[2]

Under MCL 712A.19b(3)(j), termination is proper if "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent." Similar to the discussion of reasonableness of the efforts at reunification, respondent-mother misconstrues the significance of the termination proceedings regarding the older children. Respondent-mother's failure to participate in or benefit from services, persistent combativeness, and inability to parent her children safely provided evidence that she would likely treat MJA similarly. The trial court did not terminate her parental rights by concluding that she necessarily would treat MJA similarly merely because she had treated the older children in a particular way. Rather, the trial court gave her a meaningful opportunity to show that she could safely parent MJA. Under the circumstances, there is no reason to believe MJA was situated differently from the other children. She argues that she gave her youngest child the most of her attention during parenting-time visits, while failing to address the fact that her conduct was highly inappropriate overall, and she exposed that child to dangers on multiple occasions. There was ample evidence specifically regarding MJA that respondent-mother was incapable of providing for MJA, still failed to understand how to parent safely, was homeless and not making meaningful efforts to find housing, was belligerent and violent, was failing to take medications, and showed no insight into her mental health challenges. Under the circumstances, the trial court did not clearly err by finding that MJA would be harmed if returned to her care.[3]

Affirmed.

/s/ Michael F. Gadola
/s/ Brock A. Swartzle
/s/ Anica Letica

---

[2] Respondent-mother correctly observes that, in *In re AH*, this Court observed that the Legislature "effectively codified the doctrine of anticipatory neglect" in MCL 722.638, which provides that a termination petition must be filed on the basis of a parent's conduct regarding prior children under certain circumstances. *In re AH*, 245 Mich App at 83-84. Respondent-mother seemingly contends that the Legislature thereby preempted application of the doctrine under any circumstances not enumerated in the statute. However, *In re AH* only addressed whether the statute violated parents' constitutional rights by requiring petitions to be authorized under certain circumstances; it found the statute consistent with the doctrine and did not hold that the statute preempted the doctrine under all circumstances. This Court regards *In re AH* as supporting the continued validity of the doctrine. *In re Christie*, 339 Mich App at 6.

[3] Respondent-mother does not challenge whether termination was in MJA's best interests, so we only briefly note that the evidence showed MJA had never known any family other than his preadoptive foster placement, where he was thriving, while respondent-mother effectively proved she was still incapable of safely caring for a child.