*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* CD, Minor.

UNPUBLISHED
May 13, 2026
10:37 AM

No. 371098
Crawford Circuit Court
Family Division
LC No. 21-004622-NA

ON REMAND

Before: MURRAY, P.J., and REDFORD and RICK, JJ.

PER CURIAM.

This matter returns to this Court on remand from our Supreme Court. *In re CD Minor*, ___ Mich ___; 25 NW3d 122 (2025) (*In re CD II*). This Court previously affirmed the trial court's order terminating respondent-mother's parental rights to the minor child. *In re CD Minor*, unpublished per curiam opinion of the Court of Appeals, issued June 24, 2025 (Docket No. 371098) (*In re CD I*). On remand, we again affirm.

## I. FACTUAL BACKGROUND

In *In re CD I*, we set forth the facts of the case as follows:

This case was commenced approximately a month after respondent-mother's home was raided by a police drug taskforce following three controlled purchases of prescription drugs from respondent-mother, during which the police found and confiscated a dangerous butane-based THC extraction lab from her garage. The minor child, CD, was placed in the care of his father in an ex parte custody order entered in a custody case between the father and respondent-mother. The father was simultaneously granted a PPO against respondent-mother. The same judge presided over this case, the custody case, and the PPO proceedings. The trial court took judicial notice of the PPO proceedings in a contempt hearing in this case without objection by respondent-mother's attorney. Respondent-

-1-

mother also was charged criminally, and a different judge presided over her criminal case. [*Id.*, unpub op at 1-2.]

The trial court terminated mother's parental rights to CD under MCL 712A.19b(3)(j) (reasonable likelihood of harm if child returned to parent). Mother argued in her first appeal to this Court that the trial court erred by taking judicial notice of a separate PPO case involving CD's father. This Court affirmed the order terminating mother's parental rights. *Id.*, unpub op at 4. Mother thereafter obtained new appellate counsel and filed an application for leave to appeal in our Supreme Court. In that application, mother argued that she had been denied the effective assistance of appellate counsel during the proceedings in this Court. Mother explained that, in the prior appeal, her appointed appellate counsel raised only a single issue in a brief, two-paragraph argument and did not meaningfully develop additional potential claims. In lieu of granting leave to appeal, our Supreme Court agreed that further review was warranted and entered an order remanding the matter "for a new appeal." *In re CD II*, ___ Mich at ___.

On remand, mother filed a supplemental brief raising three primary issues that were not previously presented: (1) that the trial court failed to properly advise her of her appellate rights under MCR 3.972(F), thereby invalidating the court's assumption of jurisdiction; (2) that the trial court clearly erred in finding statutory grounds for termination; and (3) that the trial court also erred in determining that termination was in CD's best interests. We now consider those issues.

## II. ANALYSIS

## A. JURISDICTIONAL CHALLENGE

Mother first argues that the trial court failed to properly advise her of her appellate rights, rendering the adjudication defective and depriving the court of jurisdiction. Even assuming that the trial court did not strictly comply with MCR 3.972(F), mother is not entitled to relief.

"Whether a trial court can assert jurisdiction over a child protective proceeding is a question of law we review de novo."[1] *In re Hull*, 345 Mich App 562, 567; 7 NW3d 114 (2023); see also *In re Ferranti*, 504 Mich 1, 14-15; 934 NW2d 610 (2019). We review a jury's verdict finding grounds to take jurisdiction deferentially, considering the evidence in the light most favorable to the petitioner to determine whether a rational juror could have found a ground for jurisdiction by a preponderance of the evidence. *In re Sluiter*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368266); slip op at 12. We must draw all reasonable inferences and make all credibility choices in favor of the verdict. *Id.* at ___; slip op at 12. "Accordingly, this Court's focus is directed to what statutory grounds the jury could conclude were established by a preponderance of the evidence." *Id.* at ___; slip op at 13.

The plain language of MCR 3.972(F) and MCR 3.973(G) establish that, following adjudication, a trial court must advise a respondent of certain appellate rights. These rights include that the respondent has a right to appeal the assumption of jurisdiction and that failing to timely

---

[1] Because this matter returns to us on remand for a new appeal, we consider mother's claims as though they were properly preserved and review them on the merits.

-2-

file such an appeal may bar them from challenging the assumption of jurisdiction later. The trial court did not comply with the court rules requiring advisement of appellate rights. Although that error is not insignificant, it does not warrant reversal. Due process in child protective proceedings requires that a respondent be afforded a meaningful opportunity to be heard before the state may interfere with the parent-child relationship. *In re Ferranti*, 504 Mich at 16-17. If the adjudication itself is constitutionally defective, such as where a respondent enters a plea without being properly advised of the rights they are relinquishing, reversal is required because the defect goes to the very foundation of the court's authority to exercise jurisdiction. *Id*. at 29-30. That did not happen here. This case proceeded to a jury trial at which DHHS was required to prove a statutory basis for jurisdiction by a preponderance of the evidence. Mother was afforded her core due-process protections, including representation by trial counsel and an opportunity to contest the allegations against her. *In re Rood*, 483 Mich 73, 92-93; 763 NW2d 587 (2009). The jury's verdict supplied the factual predicate necessary for the court to exercise jurisdiction, and that determination is not challenged on the basis of any defect in the adjudicative procedure itself. Thus, the asserted error did not implicate the constitutional validity of the adjudication. See *In re Ferranti*, 504 Mich at 29.

Nor does the alleged error require reversal as a matter of rule-based compliance. A violation of a court rule does not automatically entitle a party to relief. Rather, the error must be shown to have affected the outcome or otherwise undermined the fairness or reliability of the proceedings. See MCR 2.613(A). Mother has not made that showing. The record reflects that mother ultimately pursued appellate review, including an appeal to this Court and an application for leave to appeal in our Supreme Court, which resulted in the present remand. Accordingly, even if the trial court's advisement was incomplete, mother was not deprived of the ability to seek appellate review, and the purpose of MCR 3.972(F) was not frustrated in any meaningful sense.[2]

Mother also argues that the trial court erred by assuming jurisdiction over CD. To exercise jurisdiction in a child protective proceeding, DHHS must prove by a preponderance of the evidence that the child comes within one or more of the statutory grounds set forth in MCL 712A.2(b). *In re Brock*, 442 Mich 101, 108-109; 499 NW2d 752 (1993). The trial court here assumed jurisdiction under MCL 712A.2(b)(1) and (2), which state, in relevant part:

(b) Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:

(1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or

---

[2] Mother nevertheless relies on *In re Boursaw*, 239 Mich App 161; 607 NW2d 408 (1999), to argue that the trial court's failure to comply with the court rules requires reversal. *Boursaw* involved defects that undermined the adjudicative process itself and called into question the validity of the court's exercise of jurisdiction. By contrast, the error alleged here occurred after the adjudication was completed and did not affect the jury's determination that statutory grounds for jurisdiction were established by a preponderance of the evidence. Accordingly, *Boursaw* is not dispositive.

her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship . . . .

\* \* \*

(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in . . . .

The evidence supports the trial court's exercise of jurisdiction under MCL 712A.2(b)(1). Although mother correctly contends that there was no evidence she failed to provide food, clothing, or shelter, her argument overlooks that subsection (b)(1) is written in the disjunctive. See *Dine Brands Global, Inc v Eubanks*, ___ Mich ___; ___ NW3d ___ (2025) (Docket Nos. 165391 and 165392); slip op at 23 (ellipsis, quotation marks, brackets, and citation omitted) (stating that " 'or' is a disjunctive term, used to indicate a disunion, a separation, an alternative," and placing it between two words indicates two alternative options). Thus, MCL 712A.2(b)(1) can alternatively be established if the child "is subject to a substantial risk of harm to his or her mental well-being."

On that subject, mother argues that, since her contact with CD was limited to supervised parenting time, she could not have subjected him to a "substantial risk of harm" within the meaning of MCL 712A.2(b)(1). But the mere fact that a child is not residing with a parent does not necessarily preclude the parent from continuing to pose a risk to the child's mental well-being. *In re Leach*, 347 Mich App 26, 32-33; 14 NW3d 178 (2023). The record clearly shows that mother treated CD inappropriately during parenting time. On various occasions, mother struck CD for hanging up her phone, threatened to return his birthday gift if he did not make a phone call, promised him that he would be home soon or that he would have a sibling soon, gave him medications without checking whether he had already been given the medication, forced him to participate in phone calls that he did not want to engage in, threatened to stop parenting-time visits because he was hurting her feelings or being mean to her, and participated in a criminal plea hearing during a parenting time.

Additionally, CD was not isolated from mother even outside of parenting time. Mother repeatedly sent the police to CD's father's house, and when she was informed that CD was further traumatized by the police, mother said that she "didn't care" and threatened to "do it every day if she had to." Mother therefore showed manipulative and hurtful behavior toward CD even while supervised, minimized her misbehavior, and demonstrated no concern for CD's well-being. In light of this evidence and the jury's ability to evaluate mother's credibility as a witness, see *In re Sluiter*, ___ Mich App at ___; slip op at 12, the evidence supports the jury's verdict that mother posed "a substantial risk of harm to [CD's] mental well-being[.]" MCL 712A.2(b)(1). Therefore, there was no error in finding grounds to exercise jurisdiction under MCL 712A.2(b)(1).

DHHS need only prove "one or more of the statutory grounds for jurisdiction." *In re Sanders*, 495 Mich 394, 405; 852 NW2d 524 (2014). But we briefly observe that there was also no error in finding MCL 712A.2(b)(2) proven as well. Even though CD's father had full custody of CD, custody was obtained through an ex parte order entered in a separate custody proceeding. The custody order was thus potentially only temporary. The petition was filed because mother

refused to cooperate to ensure that CD would remain safe if the order ended. The evidence supported a finding that CD's placement was not stable. It further supported a finding that mother took no responsibility for her conduct and would expose CD to unsafe conditions unless the court took jurisdiction. Under the circumstances, it was proper to consider "reasonably anticipated future abuse." See *In re KV*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 374236); slip op at 7. For the foregoing reasons, mother is not entitled to relief.

## B. STATUTORY GROUNDS

Mother next argues that the trial court clearly erred in finding that DHHS established statutory grounds for terminating her parental rights under MCL 712A.19b(3)(j). We disagree.

"A court may terminate a respondent's parental rights if one or more of the statutory grounds for termination listed in MCL 712A.19b(3) have been proven by clear and convincing evidence" and the trial court finds that termination is in the child's best interests. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). The trial court's best-interest findings and statutory-grounds findings are both reviewed for clear error. *Id.* "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted).

In the absence of circumstances that are not alleged here, reasonable efforts at reunifying the child and a parent must be made in all cases. *In re Simonetta*, 340 Mich App 700, 707-708; 987 NW2d 919 (2022). Termination of parental rights is premature if the parent "was not afforded a meaningful and adequate opportunity to participate" in those efforts. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). "Although DHHS has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of the respondent-parent to participate in the services and demonstrate having benefited from them." *In re MJC Minor*, 349 Mich App 42, 61; 27 NW3d 122 (2023). A parent's failure to participate in, comply with, and benefit from a service plan is evidence that the parent will not be able to provide the child with proper care and custody and that the child will be harmed if returned to the parent's care. *In re Kaczkowski*, 325 Mich App 69, 77; 924 NW2d 1 (2018). If a parent has demonstrated significant progress, termination of the parent's parental rights may be improper even if the parent is not yet a model parent. *In re Boursaw*, 239 Mich App 161, 176-177; 607 NW2d 408 (1999), overruled in part on other grounds by *In re Trejo*, 462 Mich 341, 353-354 & 354 n 12; 612 NW2d 407 (2000). But "[e]ven if conditions improved in the months before the termination hearing, a trial court may look to the totality of the evidence to determine whether a parent accomplished meaningful change in the conditions that led to adjudication." *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326, 334; 985 NW2d 912 (2022).

MCL 712A.19b(3)(j) permits termination where "[t]here is a reasonable likelihood, based on the conduct or capacity of the parent, that the child will be harmed if he or she is returned to the home of the parent." The record reflects that mother's conduct leading to adjudication involved criminal activity, substance-related concerns, and unsafe conditions in the home, including the presence of controlled substances and materials associated with a butane extraction process. More significantly, the evidence demonstrated that mother failed to meaningfully benefit from services over the course of the case. Mother initially refused to engage in services, resisted cooperation

with DHHS, and failed to provide necessary releases or participate in recommended treatment in a timely manner. Although she eventually participated in some services, the trial court found that her progress was delayed, inconsistent, and largely superficial.

The distinction between participation and benefit is critical. A parent must not only participate in services but must also demonstrate that the services have rectified the conditions that led to adjudication. *In re White*, 303 Mich App 701, 710-711; 846 NW2d 61 (2014). Here, the trial court expressly found that mother had not internalized the goals of the case service plan and had not achieved meaningful behavioral change. The record supports that finding. By the time of the termination hearing, mother had been participating in therapy for a year. Her therapist opined that mother was minimally six months, and perhaps longer, away from achieving the kind of stability she would need before parenting time could be resumed. Mother frequently missed her drug and alcohol screenings and parenting-time visits. During the proceedings, she also married an individual who had been convicted of a felony even after the trial court prohibited her from bringing that individual around CD.

The trial court found that mother lacked insight into the impact of her conduct on CD and failed to take responsibility for the conditions that led to CD's removal from her care. The evidence further showed that mother minimized her behavior, resisted acknowledging wrongdoing, and viewed the proceedings as unjustified rather than as an opportunity to address legitimate concerns. A parent's lack of insight and failure to accept responsibility strongly supports a finding that the risk of harm remains. *Id*.

Mother nevertheless argues that she made significant progress and should have been afforded additional time. But the trial court considered that argument and found that mother had been given ample opportunity to participate in and benefit from services but failed to demonstrate more than superficial improvement. The court was not required to disregard mother's history of noncompliance and lack of benefit in favor of her late-stage efforts. Importantly, MCL 712A.19b(3)(j) does not require certainty of harm, only a reasonable likelihood. Given mother's unresolved issues, lack of insight, and continued poor judgment, the trial court did not clearly err in concluding that returning CD to her care would place CD at risk of harm. Accordingly, the trial court did not clearly err in finding that MCL 712A.19b(3)(j) was established by clear and convincing evidence.

## C. BEST INTERESTS

Mother also argues that termination of her parental rights was not in CD's best interests. We disagree.

When determining a child's best interests, the trial court may rely on the entire record and consider the child's bond to the parent; the parent's parenting ability; the child's need for permanency, stability, and finality; the child's age; and inappropriate parenting techniques. *In re Sanborn*, 337 Mich App 252, 276-277; 976 NW2d 44 (2021). The court may also "consider the parent's compliance with his or her case service plan, the parent's visitation history with the child, the child's well-being while in care, and the possibility of adoption." *In re MJC*, 349 Mich App at 62 (quotation marks, brackets, and citation omitted). A child's "placement with a relative weighs against termination, but that fact is not dispositive." *Id*. at 66.

-6-

The trial court properly considered the relevant best-interest factors. It acknowledged that mother and CD shared a bond and that CD was placed with his nonrespondent father. However, the court found that these considerations were outweighed by mother's inability to provide safe and stable care and by CD's need for permanence and stability. The record supports that conclusion. The same concerns that supported termination under subsection (j), including mother's lack of insight, poor judgment, and failure to benefit from services, also bore directly on the determination of CD's best interests. A child's need for safety and stability outweighs the preservation of a parental relationship where the parent has not demonstrated the ability to provide appropriate care. See *In re Moss*, 301 Mich App 76, 87-88; 836 NW2d 182 (2013) (stating that, at the best-interests stage of child protective proceedings, the focus of the inquiry is on the child, not the parent).

The trial court also considered the quality of the parent-child bond between mother and CD. The court found that it had diminished over time, particularly as a result of mother's inconsistent parenting time and inappropriate behavior during visits. The evidence showed that mother's interactions with CD were at times harmful or confusing and did nothing to promote CD's emotional well-being.

Further, CD was doing well in his placement with his father. CD had stability and his father met his needs. These advantages supported the trial court's decision. Although placement with a relative or parent may weigh against termination, it is not dispositive. *In re Olive/Metts Minors*, 297 Mich App at 43. The trial court reasonably concluded that termination was necessary to provide CD with permanence and to protect him from ongoing risk associated with mother's conduct. The trial court thus also properly considered CD's need for finality. Mother's progress was incomplete and delayed, and further delay would not serve CD's best interests. A child is not required to wait indefinitely for a parent to achieve stability, particularly where the parent has failed to demonstrate meaningful change over the course of the proceedings. *In re Dahms*, 187 Mich App 644, 647; 468 NW2d 315 (1991). Given the totality of the circumstances, the trial court did not clearly err in concluding that termination of mother's parental rights was in CD's best interests.

Affirmed.

/s/ Christopher M. Murray
/s/ James Robert Redford
/s/ Michelle M. Rick